COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

                    Plaintiff-Appellee,

v

EDWARD KHALIL,

                    Defendant-Appellant.

UNPUBLISHED
May 10, 2016


No.   321744
Wayne Circuit Court
LC No.   12-003518-FC


Before:  BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Defendant was originally tried in 2012 and a jury convicted him of first-degree murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  However, the trial court granted defendant's motion for a new trial on the ground that the jury's verdict was against the great weight of the evidence.  At defendant's second trial in 2014, a jury convicted him of the lesser included offense of second-degree murder, MCL 750.317, as well as felony-firearm.  The trial court sentenced defendant to a prison term of 16-1/2 to 30 years for the murder conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction.  Defendant again moved for a new trial, which the trial court denied.  Defendant now appeals as of right.  We affirm defendant's convictions, but remand this case for further sentencing proceedings consistent with this opinion.

I.  FACTS AND PROCEEDINGS

Defendant's convictions arose from the shooting death of Anthony Jones, who was shot while trespassing in a vacant apartment building at 931 Covington in Detroit.  Defendant and Parminder Saroya owned the building, which was undergoing renovations.  Jones and Arthur Richardson had broken into the building to strip copper and other metals to sell as scrap.  The shooting was likely to have occurred during a two-minute window between 6:07 and 6:08 a.m., as established by analysis of surveillance videos recorded by cameras mounted on a neighboring apartment building at 980 Whitmore.

According to the prosecution's theory at trial, defendant and Saroya were frustrated by the Detroit Police Department's failure to arrest scrappers.  Defendant came to 931 Covington during the early morning hours of September 15, 2011, after being notified that scrappers were present.  Defendant summoned an employee, Charles Shavers, to bring him a shotgun.  Defendant then shot Jones, who was attempting to leave the building though a window, and

-1-

prevailed upon Shavers to accept blame for the shooting. The surveillance videos did not capture the shooting, but captured images of Shavers carrying the shotgun from 980 Whitmore towards the shooting location.

The defense theory at trial was that Shavers shot Jones while defendant was several miles away from the building. The defense theory was premised on cellular telephone records, which established that defendant's cellular telephone "interacted" with cellular telephone towers located six or seven miles away from the building during the relevant two-minute window.

## II. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that he should be granted a new trial because the jury's verdict was against the great weight of the evidence. We review for an abuse of discretion the trial court's decision denying defendant's motion for a new trial on this ground. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008).

A new trial may be granted if a jury's verdict is against the great weight of the evidence, but only if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Lemmon,* 456 Mich 625, 627, 635; 576 NW2d 129 (1998); *Unger*, 278 Mich App at 232. "Conflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial." *Unger*, 278 Mich App at 232; see also *Lemmon,* 456 Mich at 627. Generally, "a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "[U]nless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *People v Musser*, 259 Mich App 215, 219; 673 NW2d 800 (2003) (citations and quotation marks omitted).

The trial in this case was not a simple credibility contest between defense and prosecution witnesses, but a contest in which defendant's testimony was corroborated by objective evidence about defendant's cellular telephone. Defendant's "cellular alibi" was corroborated by Special Agent Joseph Slatalla's testimony that defendant's cellular telephone use during the morning of September 15, 2011, was consistent with defendant's "life pattern" and consistent with his reported movements at other times between 4:00 and 8:00 a.m. that morning. Slatalla also testified that he determined that the cellular network was working according to design when calls were placed to and from defendant's cellular telephone, meaning that the calls interacted with the cellular towers within their normal ranges. There was no testimony explaining how defendant came to be separated from his cellular telephone for the relevant brief period. In addition, although Shavers testified that he called defendant's cellular telephone shortly after the shooting and a woman answered, there was no testimony explaining the identity of this woman, or how she came into possession of defendant's telephone. In addition to the cellular telephone and surveillance video evidence, police witnesses testified that Shavers admitted shooting Jones and did not object when defendant told the officers that Shavers shot him.

Despite this evidence, Shavers denied shooting Jones and inculpated defendant as the shooter, and other witnesses placed defendant at the scene at the time of the shooting. The testimony of Shavers and other prosecution witnesses was not so far impeached that it was deprived of all probative value. *Musser*, 259 Mich App at 219. Nor was the prosecution's case against defendant contrary to indisputable physical facts or in defiance of physical realities. *Id*. Defendant's cellular telephone was not attached to his person; it was not impossible that another person temporarily took possession of his phone, and whatever problems were associated with the credibility of prosecution witnesses, it was still within the jury's province to decide whether to believe the pertinent portions of their testimony.

Shavers's testimony was corroborated by other witnesses. Arthur Richardson testified that defendant angrily shouted that he wanted the trespassers killed. Richardson also testified that he heard defendant say "we got that mother f***er" and that defendant sounded happy when he said it. Shantele Henderson testified that defendant was the person she saw with a rifle and heard saying that he killed the "motherf***er." Henderson and Richardson corroborated each other by their similar testimony. Moreover, defendant's behavior reflected consciousness of guilt. He started to call 911 shortly after the shooting, but disconnected the call and decided instead to discuss the incident with Shavers, Saroya, and Saroya's son. He did not call 911 until two hours after the shooting. Defendant's conduct and statements before the shooting reflected his motive and intent. Defendant told the police that he would buy a shotgun because he was frustrated by the reoccurrence of scrapping. Richardson testified that he heard defendant say that he wanted the scrappers killed, not arrested. Evidence was presented that one or more individuals remained behind when the vehicles left before the shooting. Richardson testified that, after the shooting, a woman asked defendant what happened.

The trial court did not abuse its discretion in determining that the evidence did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.

### III. SCORING OF OFFENSE VARIABLE 19

Defendant argues that the trial court erred in assessing 10 points for offense variable (OV) 19 of the sentencing guidelines. "Under the sentencing guidelines, a trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Thompson*, ___ Mich ___; ___ NW2d ___ (2016) (Docket No. 318128); slip op at 3. "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *Id*. (citations and quotation marks omitted). "This Court reviews de novo [w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Id*. (citations and quotation marks omitted).

The trial court is authorized to assess 10 points for OV 19 if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). In *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010), this Court held that a 10-point score for OV 19 was justified where there was "evidence that defendant asked one of his companions to dispose of the knife he used to stab the victim and asked others to lie about his whereabouts during the night of the crime." This Court stated:

Clearly, defendant's attempt to hide or dispose of the weapon in conjunction with his encouragement of others to lie about where he was at the time of the stabbing was a multifaceted attempt to create a false alibi and mislead the police. His actions ultimately constituted fabrications that were self-serving attempts at deception obviously aimed at leading police investigators astray or even diverting suspicion onto others and away from him. Unmistakably, defendant's actions were attempts to interfere with the administration of justice as contemplated by the plain language of MCL 777.49(c), and the trial court did not abuse its discretion by assessing 10 points for OV 19. [*Ericksen*, 288 Mich App at 204.]

In this case, the trial court assessed 10 points for OV 19 because there was evidence that defendant removed surveillance video equipment from the building after the shooting. The surveillance equipment had the potential to identify the perpetrator of the homicide. Destruction of potentially valuable evidence qualifies as interference with the administration of justice. Defendant argues, however, that the evidence was insufficient to establish that he actually took or destroyed the equipment. However, Shavers testified that before he, defendant, and the Saroyas left the building after the shooting, defendant and the Saroyas entered the building for a few minutes. When they left the building, one of them was carrying the video recorder. Even though Shavers could not remember which person was carrying the recorder, his testimony supported an inference that defendant either removed the recorder himself or cooperated with and approved the decision to remove it. Although defendant asserts that Shavers's testimony was not credible, this Court will defer to the trial court's assessment of a witness's credibility. *People v Shipley*, 256 Mich App 367, 373; 662 NW2d 856 (2003). The trial court did not clearly err in crediting Shaver's testimony and did not err in finding that the testimony supported a 10-point score for OV 19.

## IV. JUDICIAL FACT-FINDING

Defendant also argues that he is entitled to sentencing relief under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), because judicial fact-finding at sentencing increased the sentencing guidelines range. We agree. Because defendant did not raise this Sixth Amendment issue at sentencing, it is unpreserved, and our review is for plain error affecting defendant's substantial rights. *Id*. at 392.

In *Lockridge, id*. at 388-389, the Michigan Supreme Court, relying on *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), and *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), held that Michigan's sentencing guidelines scheme violated the Sixth Amendment because it allowed a sentencing judge to find facts that are used to score the offense variables and, thereby, to mandatorily increase the floor of the sentencing guidelines range. To remedy this constitutional violation, the Court severed the mandate in MCL 769.34(2) that a sentencing judge sentence a defendant within the guidelines range to the extent that the range is a product of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt. *Lockridge*, 498 Mich at 391-392. The Court held that a guidelines range calculated in violation of *Alleyne* is "advisory only." *Id*. at 399. The Court stated, however, that the guidelines remain "a highly relevant consideration in a trial court's exercise of sentencing discretion[,]" and that sentencing judges remain obligated to

determine the applicable guidelines range and to take the guidelines range into account when imposing a sentence. *Id*. at 391.

The Court discussed how its decision should be applied in other cases where, as here, review is for plain error affecting substantial rights. The Court stated that in cases where the "facts admitted by a defendant or found by a jury were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced[,] . . . an unconstitutional constraint [will have] actually impaired the defendant's Sixth Amendment right. *Id*. at 395 (emphasis in original). Where the defendant demonstrates such a constraint and the defendant was not subject to an upward departure from the guidelines range, he has made a "showing of the potential for plain error sufficient to warrant remand to the trial court for further inquiry." *Id*.

In this case, we agree that judicial fact-finding was necessary to the trial court's assessment of (1) 15 points for OV 5, MCL 777.35(1)(a) (serious psychological injury to a victim's family), (2) 10 points for OV 14, MCL 777.44(1)(a) (offender was a leader in a multiple offender situation), and (3) 10 points for OV 19, MCL 777.49(c) (offender interfered with or attempted to interfere with the administration of justice). Moreover, the scoring of those variables placed defendant in OV Level III instead of OV Level II on the applicable sentencing grid for second-degree murder. MCL 777.61. A remand for further inquiry regarding defendant's sentence is appropriate.

Defendant's convictions are affirmed but this case is remanded for further sentencing proceedings in accordance with *Lockridge*. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering