# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOEL IRWING WILSON,

        Defendant-Appellant.

UNPUBLISHED
August 23, 2016

No. 327375
Bay Circuit Court
LC No. 13-010011-FH

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant of racketeering, MCL 750.159i(3), larceny by conversion of $20,000 or more, MCL 750.362, two counts of securities fraud, MCL 451.2501, and two counts of securities act violation, MCL 451.2508. The court sentenced defendant to concurrent prison terms of 105 to 240 months for the racketeering conviction and 80 to 120 months for each remaining conviction. Defendant appeals as of right. We affirm defendant's convictions, but remand for further proceedings consistent with this opinion.

## I. FACTS

Defendant's convictions arise from his involvement in an elaborate real estate scheme involving the purchase of distressed property to be renovated and sold at a profit. In 2009 defendant and his partner, Michael Kazee, started Diversified Group Management Partnership, LLC (Diversified) and American Realty Funds Corporation (American). Diversified, in turn, created 17 limited partnerships, each with a limited number of investors.[1] Kazee left the company in May 2012. The prosecution alleged that defendant structured the various entities in a manner designed to evade compliance with federal and state securities laws and regulations, and to deceive individuals into investing in unprofitable companies, thereby allowing defendant to use the investment funds for his family's personal gain, rather than for the purposes for which the funds were invested. Over the course of this enterprise from 2009 to 2012, approximately 125 investors invested approximately $7 million. The investors lost approximately $6.4 million.

---

[1] American was a registered, publicly traded company. None of the Diversified partnerships were registered.

-1-

The prosecutor maintained that, during this time period, defendant converted approximately $583,000 in Diversified assets.

## II. CHANGE OF VENUE

Defendant first argues that the trial court erred in denying his motion for a change of venue due to extensive adverse pretrial publicity.[2] The record reflects that the trial court denied defendant's pretrial motion for a change of venue, without prejudice to defendant renewing the motion at trial. At trial, the court engaged in a lengthy selection process that included the sequestration of any jurors who had been exposed to media coverage about the case, and then separate questioning of each of these jurors. Defendant not only failed to renew his motion for a change of venue, but expressed satisfaction with the jury that was chosen. Under these circumstances, defendant waived review of the change of venue issue. *People v Clark*, 243 Mich App 424, 425-426; 622 NW2d 344 (2000).

## III. EXPERT TESTIMONY

Defendant next argues that the trial court erred by denying his motion for a mistrial.[3] Defendant argues that a mistrial should have been granted because (1) the prosecutor's expert witness offered his own opinions of the applicable law, and (2) the expert relied on facts not in evidence in support of his opinions. The parties agree that, in Michigan, an expert witness's testimony must be based on facts in evidence. MRE 703; *Teal v Prasad*, 283 Mich App 384, 394-395; 772 NW2d 57 (2009). The parties also agree that the expert initially relied, in part, on facts not in evidence in support of his opinion concerning defendant's actions. The question is whether the trial court abused its discretion in determining that a curative instruction, rather than a mistrial, was a proper remedy.

A mistrial is an extraordinary remedy that should be granted only when an error is so egregious that its prejudicial effect cannot be remedied in any other way. *People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988). This is not such a case. After it became apparent that the testimony of the expert was based on certain items that lacked evidentiary support, the trial court repeatedly asked the expert if his opinion would be the same based on the facts actually presented at trial, and the expert agreed that it would be. The trial court also explored which matters of evidence the expert would use to support his opinion, and the expert provided that information. The trial court then provided cautionary instructions to both the expert and the jury concerning the proper basis for the expert's testimony. Additionally, the court cautioned the expert about the difference between the ultimate question of defendant's guilt or innocence of the criminal charges and stating that defendant had misrepresented the securities to investors or had breached his standard of care as a fiduciary. The trial court also instructed the jurors that they

---

[2] We generally review a trial court's decision concerning a motion for a change venue for an abuse of discretion. *People v Jendrzejewski*, 455 Mich 495, 500; 566 NW2d 530 (1997).

[3] We review a trial court's decision to grant or deny a motion for a mistrial for an abuse of discretion. *People v Ortiz-Kehoe*, 237 Mich App 508, 512; 603 NW2d 802 (1999).

would make the ultimate decision concerning defendant's guilt or innocence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Under the circumstances, defendant has not shown that the trial court abused its discretion by denying the motion for a mistrial and instead curing the initial problems with the expert's testimony through additional questioning and appropriate jury instructions.

## IV. VIOLATION OF SEQUESTRATION ORDER

Defendant next argues that defense counsel was ineffective for failing to move for a mistrial based on violations of the trial court's sequestration order.[4] To establish ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014) (citation and quotation marks omitted).

The trial court ordered the sequestration of witnesses on the first day of trial. Defendant asserts that witnesses Pamela Buehl and Vicki Tedrow violated this order by attempting to remain in the courtroom at the beginning of the trial. The record does not support this claim. Instead, at the start of the proceedings on February 25, 2015, the prosecutor noted that there were some witnesses in the courtroom and the trial court asked them to leave. Neither Buehl nor Tedrow were mentioned by name. Even if the two were present, nothing suggests that the trial court found that they were listening to witness testimony.

Later, Buehl admitted that during a break in her testimony, she violated the sequestration order, but she denied that she had attempted to listen to the testimony of David Charlesbois, who had testified before her. Defense counsel stated that Buehl had left the courtroom during the break in her testimony and went into a nearby conference room where she began to speak to other witnesses. The prosecutor stated that he had spoken with Buehl, who admitted that she may have told another witness, presumably Tedrow, about her "perfect signatures," referring to her signatures on documents that she claimed were forged. The trial court brought Buehl into the courtroom and admonished her for speaking with other witnesses. The court also allowed defense counsel to cross-examine Buehl about the alleged violations.

In *People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008), this Court observed:

> The purposes of sequestering a witness are to "prevent him from 'coloring' his testimony to conform with the testimony of another," *People v*

---

[4] Because defendant did not raise a claim of ineffective assistance of counsel in a motion for a new trial or request for an evidentiary hearing, our review of this issue is limited to errors apparent from the record. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014).

*Stanley*, 71 Mich App 56, 61; 246 NW2d 418 (1976), and to aid "in detecting testimony that is less than candid." *Geders v United States*, 425 US 80, 87; 96 S Ct 1330; 47 L Ed 2d 592 (1976). Additionally, the United States Supreme Court has recognized three sanctions that are available to a trial court to remedy a violation of a sequestration order: "(1) holding the offending witness in contempt; (2) permitting cross-examination concerning the violation; and (3) precluding the witness from testifying." *United States v Hobbs*, 31 F3d 918, 921 (CA 9, 1994), citing *Holder v United States*, 150 US 91, 92; 14 S Ct 10; 37 L Ed 1010 (1893). Although usually stated in the context of a defense witness's exclusion in a criminal case, courts have routinely held that exclusion of a witness's testimony is an extreme remedy that should be sparingly used. See, e.g., *United States v Smith*, 441 F3d 254, 263 (CA 4, 2006); *Hobbs, supra*.

In the instant case, the trial court permitted defense counsel to cross-examine Buehl regarding her alleged violations of the sequestration order. Such cross-examination is a recognized remedy where a sequestration order has been violated. The opportunity for cross-examination allowed the jury to learn of any possible prejudice Buehl's actions may have had on Tedrow's testimony, and thereby assess whether it affected Tedrow's credibility. Defendant has not shown that defense counsel acted unreasonably by not requesting a mistrial, particularly considering that a mistrial is not a recognized remedy for violation of a sequestration order. In addition, Buehl's testimony explaining the limited nature of the violation did not establish any substantial basis for believing that the violation was calculated to aid Tedrow's testimony. Accordingly, defendant has failed to establish that counsel was ineffective for failing to move for a mistrial with respect to this issue. *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996).

## V. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that he is entitled to a new trial because the jury's verdicts are against the great weight of the evidence.[5] The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). Mere conflicting testimony and credibility concerns do not suffice to grant a new trial; rather, exceptional circumstances must exist, such as where directly contradictory testimony was so far impeached that it was deprived of all probative value, where witness testimony was so inherently implausible that a reasonable juror could not believe it, where testimony contradicted indisputable physical facts or defied physical realities, or where the case was marked with unacceptable uncertainties and discrepancies. *People v Lemmon*, 456 Mich 625, 643-646; 576 NW2d 129 (1998). "[A]bsent exceptional circumstances, issues of

---

[5] Defendant acknowledges that he did not raise this issue in a motion for a new trial below, leaving the issue unpreserved. MCR 2.611(A)(1)(e); *People v Winters*, 225 Mich App 718, 729; 571 NW2d 764 (1997). This Court reviews an unpreserved issue challenging whether convictions are against the great weight of the evidence for plain error affecting substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

witness credibility are for the jury, and the trial court may not substitute its view of the credibility for the constitutionally guaranteed jury determination thereof." *Id*. at 642 (quotation omitted).

Defendant generally maintains that the prosecution's witnesses were "deprived of all probative" value because they were investors who had lost all of their money, and thus had a motive to lie. He also argues that the prosecution's expert witness was biased against him, in part because the expert was an attorney involved in a class action suit against defendant. He argues that another witness provided testimony against him solely to obtain favorable sentencing in her own criminal case. These bases for challenging the credibility of the witnesses do not approach the threshold necessary to demonstrate that defendant's convictions are against the great weight of the evidence. They amount to nothing more than arguments that the witnesses had various motives to lie. These were credibility matters to be resolved by the jury. *Id*. They do not rise to the level of exceptional circumstances in which a court may second-guess the jury's credibility determination.

In discussing the alleged lack of evidence that he committed larceny by conversion, defendant essentially argues that because he was a signatory on the Diversified accounts, he could not have "converted" the money in the accounts to his personal use in violation of MCL 750.362. However, defendant fails to discuss all of the evidence presented, in particular the documentary evidence that supported a finding that not only did defendant lie to investors about the actual risks for their initial investment, he also forged their signatures in order to draw on their brokerage accounts without their permission. Defendant also fails to discuss the evidence that he used Diversified funds for his personal use, instead of the purposes for which they were invested.

Similarly, defendant states that no evidence was presented to show that he violated the registration requirement concerning public securities or that the Diversified partnerships were required to be registered, because no evidence was presented that the partnerships were actually advertised. However, he ignores that the jury viewed a video of defendant advertising Diversified investments, which contained advertising specifically marketing Diversified to investors outside of Michigan. Two of the prosecutor's expert witnesses testified that this advertising was enough to remove the diversified partnerships from any registration exemption.

In sum, the evidence does not preponderate so heavily against the jury's verdicts that it would be a miscarriage of justice to allow the verdicts to stand.

## VI. AMENDED COMPLAINT

Defendant was extradited from Germany to stand trial in this case. He argues that under the extradition treaty between the United States and Germany, the prosecutor was prohibited from changing, adding to, or amending the criminal charges used to justify the extradition, and that the prosecutor violated this "principle of specialty" by amending the complaint to allege new offenses, thereby depriving the trial court of personal jurisdiction over him with respect to any unextradited or amended charges. We disagree.

"The principle of specialty 'requires that the requesting country not prosecute for crimes . . . for which an extradition was not granted.' " *United States v Garrido-Santana*, 360 F3d 565, 577 (CA 6, 2004), quoting *Demjanjuk v Petrovsky*, 776 F2d 571, 583 (CA 6, 1985), vacated on other grounds, 10 F3d 338 (CA 6, 1993). The Sixth Circuit has recognized that the rule of specialty bars the prosecution of an individual for unextradited crimes. *Garrido-Santana*, 360 F3d at 578. Incorporating this principle of specialty, article 22(1) of the extradition treaty with Germany provides in pertinent part:

> A person who has been extradited under this Treaty shall not be proceeded against, sentenced or detained with a view to carrying out a sentence or detention order for *any offense* committed prior to his surrender *other than that for which he was extradited*, nor shall he be for any other reason restricted in his personal freedom, . . . [Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, signed June 20, 1978, art 22, cl 1 (emphasis added).]

The term "offense" is not specifically defined in the treaty. However, plaintiff correctly observes that the complaint and amended complaint contain the same offenses, with the same possible penalties. There are only two differences between the original and amended complaints. First, in count two of the amended complaint, concerning the larceny by conversion charge, the language was changed from the conversion of property "which belonged to Robert Wachoski and other investors in the Diversified Group" to the conversion of property "which belonged to the investors in the Diversified Group[.]" The removal of one specific complainant does not change the nature of the offense. Both complaints alleged that defendant converted money from investors in the Diversified Group; Wachoski was one member of the group. Neither the elements of the offense nor the possible punishment were changed by the amendment.

The second change involved one of the securities act violations, specifically that defendant illegally offered or sold unregistered securities, contrary to MCL 451.2508. The language was changed from "offering or selling a non-registered security to Robert Wachoski" to "offering or selling a non-registered security to Pamela Buehl[.]" The proofs for this charge remained essentially the same, despite that Wachoski may have purchased an interest in a different Diversified partnership, or invested a different amount, than Buehl. The crime charged is the offering of the unregistered security. Defendant has not shown that he was charged with a different offense so as to trigger the rule of specialty. Moreover, because no formal charging document is necessary to support a request for extradition under the treaty, see *Kaiser v Rutherford*, 827 F Supp 832, 834 (DDC, 1993), and the amendment of the complaint only fixed a technical defect in the initial complaint, we conclude that the amendment did not amount to a change in the charge or offense so as to prevent a trial on the offense. See *In re Rowe*, 77 F 161, 167 (CA 8, 1896).

## VII.  SENTENCING

Defendant argues that he is entitled to resentencing because his sentences were based on improper judicial fact-finding in violation of his Sixth Amendment right to a jury trial, and because the trial court departed from the sentencing guidelines, resulting in an unreasonable sentence.[6]

In *People v Lockridge*, 498 Mich 358, 364, 392; 870 NW2d 502 (2015), our Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US ____; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient" to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant" or found by the jury to score offense variables that mandatorily increase the floor of the guidelines minimum sentence range.  (Emphasis in original).  To remedy that violation, the Court severed MCL 769.34(2) "to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory."  *Lockridge*, 498 Mich at 364.  In addition, the Court struck the requirement in MCL 769.34(3) that a sentencing court state substantial and compelling reasons for imposing a sentence that departs from the guidelines range.  *Id.* at 364-365.  A sentence that departs from the applicable guidelines range is to be reviewed for reasonableness.  *Id.* at 392.

The trial court scored the guidelines for defendant's conviction of racketeering, a class B offense, MCL 777.16i, resulting in a guidelines range of 51 to 85 months.  The trial court departed from that range and sentenced defendant to a prison term of 105 to 240 months for his conviction of racketeering.  Although defendant argues that the scoring of offense variables 9, 10, and 14 were each based on judicially-found facts, because defendant received a departure sentence, he was not prejudiced by any impermissible judicial fact-finding in the scoring of these variables.  See *Lockridge*, 498 Mich at 394, 399 (where a court imposes a departure sentence, and thus does not rely on the guidelines minimum sentence range, the defendant cannot show prejudice from any error in scoring the guidelines in violation of *Alleyne*).

However, with respect to defendant's challenge to the substantive length of his sentences, remand for further proceedings is necessary.  Initially, defendant's reliance on the factors in 18 USC 3553(a) for determining the reasonableness of his sentences is misplaced.  In *People v Steanhouse*, 313 Mich App 1, 47; ___ NW2d ___ (2015), lv gtd ___ Mich ___ (2016), this Court expressly rejected the application of 18 USC 3553(a) for purposes of determining whether a departure sentence in Michigan is unreasonable under *Lockridge*.  Instead, the reasonableness of a departure sentence is to be determined under the "principle of proportionality" standard set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).  *Steanhouse*, 313 Mich App at 47-48.  This Court further held in *Steanhouse* that where, as here, a defendant was sentenced

---

[6] A Sixth Amendment challenge presents a question of constitutional law that this Court reviews de novo.  *People v Drohan*, 475 Mich 140, 146; 715 NW2d 778 (2006).  This Court reviews a departure sentence for reasonableness.  *People v Lockridge*, 498 Mich 358, 365, 392; 870 NW2d 502 (2015).

before *Lockridge* overturned the substantial and compelling reason standard for departures, and the trial court was unaware of and not expressly bound by the reasonableness standard rooted in *Milbourn*, the case should be remanded for a *Crosby*[7] proceeding, as adopted in *Lockridge*. *Steanhouse*, 313 Mich App at 48. On remand, the trial court should follow the procedure described in *Lockridge*. Defendant must be given the option of promptly notifying the trial court that resentencing will not be sought. If notification is not received in a timely manner, the trial court shall continue with the remand procedure as explained in *Lockridge*. See *id*. at 48-49.

We affirm defendant's convictions, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[7] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).