# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAKEEME ORLANDO GRIFFIN,

        Defendant-Appellant.

UNPUBLISHED
October 6, 2016

No. 325275
Berrien Circuit Court
LC No. 2014-001522-FC

---

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Defendant, Jakeeme Orlando Griffin, appeals by right his jury trial convictions of two counts of assault with intent to do great bodily harm less than murder ("AWIGBH"), MCL 750.84; felon in possession of a firearm, MCL 750.224f; possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b; two counts of assault with a dangerous weapon ("felonious assault"), MCL 750.82; and carrying a concealed weapon ("CCW"), MCL 750.227. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to five to 15 years for each conviction of AWIGBH, 36 to 90 months for felon-in-possession, 36 to 90 months for CCW, two to six years for each conviction of felonious assault, and two years for felony-firearm. We affirm.

Defendant's convictions arise from an altercation occurring on April 18, 2014, during which he fired a handgun in the direction of the victims, Juan Hassel, Jr., and Ponenail "P.J." Wright, Jr. At trial, defendant admitted that he fired the handgun but contended that he did so in self-defense. Witnesses at trial offered conflicting testimony. The altercation arose from a long-running feud between defendant's younger brother, Henry Griffin, and Anfernee Kyles, who lived next door. The feud had resulted in several physical altercations and had involved the two boys' families and friends. On the date of this incident, defendant arrived at his home in his grandmother's vehicle. Hassel and Wright were in the driveway next door, exiting a U-Haul truck. The parties exchanged words. Defendant and his mother testified that Wright threatened defendant's life. Other witnesses testified that defendant threatened Wright and Hassel's life. In any event, defendant acknowledged that he fired shots toward the two victims. Defendant alleged that he fired because Wright was holding a book bag and had his hand on what defendant believed to be the handle of a firearm. There was testimony that after defendant started shooting, Hassel retrieved a handgun from the cab of the U-Haul and returned fire. Defendant was charged and convicted of firing shots at Hassel and Wright.

-1-

Defendant first argues that he was deprived of a fair trial because the prosecutor improperly vouched for the credibility of prosecution witnesses and referred to defendant as a liar during closing arguments. We disagree.

At trial, defendant failed to object to any of the alleged instances of prosecutorial misconduct, rendering these claims unpreserved. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Id*. "Under the plain error rule, defendants must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006). "Generally, the third factor requires a showing of prejudice—that the error affected the outcome of the proceedings." *Id*. Even if plain error is found, "[r]eversal is warranted only when the plain . . . error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation and quotation marks omitted).

Claims of prosecutorial misconduct are decided on a case-by-case basis, reviewing a prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial. *Brown*, 294 Mich App at 382-383. "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007)(citation omitted). The prosecutor may properly argue the evidence and all reasonable inferences arising from it that relate to the prosecution's theory of the case. *Id*. at 66. Further, the prosecutor has wide discretion in arguing reasonable inferences from the evidence and need not use only meek language. *Id*. But a prosecutor may not vouch for the credibility of a witness by implying special knowledge concerning the witness's truthfulness. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). "A prosecutor may, however, argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).

Defendant alleges that the prosecutor improperly vouched for the credibility of several prosecution witnesses, citing the following passages from the prosecutor's closing argument.

With regard to Shanice Lewis, the prosecutor stated:

The Judge will give the instruction that that [preliminary examination] testimony can be considered just the same as if it was live testimony here today. Does that really satisfy you? No, I'm sure it doesn't. But just consider that testimony and what it adds, okay? There's no beef. She's got no feud with anyone. She's got no reason to lie for anyone.

The prosecutor did not improperly vouch for Lewis's credibility. Specifically, the prosecutor did not state or imply that he had some special knowledge concerning her credibility. *Bahoda*, 448 Mich at 276. Lewis testified that she did not personally known defendant, Hassel, or Wright. Her testimony does not evidence any animosity toward defendant or any other party.

-2-

Thus, the prosecutor merely argued a reasonable inference from this fact in evidence that Lewis had no "feud" with defendant or reason to lie. *Howard*, 226 Mich App at 548. Because this challenged remark was not in error, defendant cannot establish plain error affecting his substantial rights. *Pipes*, 475 Mich at 279.

With regard to Kyles, the prosecutor stated:

> Why would Anfernee lie about that up here? He's got no reason to lie. He may—he's got a beef against [defendant], yeah, he flat out admitted it. He said he's still—he—he was still upset throughout the summer. He's probably upset because the Defendant also shot towards his house. Wouldn't that upset someone? So, yeah, Anfernee was upset. He had no problem admitting it.

Again, the prosecutor did not improperly vouch for Kyles's credibility by implying that he had some special knowledge of Kyles's credibility. *Bahoda*, 448 Mich at 276. Indeed, the prosecutor specifically pointed out that, due to the long-running feud, Kyles was upset with defendant and Henry, allowing for a possible inference that Kyles would like to see defendant punished. Thus, the prosecutor did not actually vouch for Kyles's credibility and certainly did not imply that he had some special knowledge as to Kyles's credibility. Because there was no error on this basis, defendant cannot establish plain error affecting his substantial rights.

With regard to Lamar Wills, the prosecutor stated:

> Lamar did not want to be here. He had been threatened, called a "snitch", spent most of the summer in his house, according to his mother, things he would never actually do—normally do.

> He's got nothing to gain by coming in a testifying, except having to go back and live in that neighborhood and live with having testified about this. That's not easy for him, and he testified about that. You heard most of the witness's [sic] say it wasn't easy for them to come in here and testify because it's not, it's hard.

* * *

> But look at the physical evidence and look how it matches up with Lamar's testimony. Why? Because Lamar came in here to tell you the truth because he has no reason to lie against this Defendant.

The prosecutor did not improperly vouch for Wills's credibility. Wills testified that he had been threatened and did not want to testify, and he did not look forward to living in the neighborhood after having testified. His mother testified that after the incident at issue, Wills spent most of his time indoors because he feared testifying. Thus, the prosecutor permissibly argued from the testimony in evidence that Wills did not wish to testify. Likewise, Wills testified that he had no personal animosity, or "beef," with defendant, allowing the prosecutor to argue the reasonable inference that Wills had no reason to lie about defendant. Defendant also testified that Wills had no reason to lie. The prosecutor also did not imply that he had some special knowledge concerning Wills's credibility. Accordingly, the prosecutor did not

-3-

impermissibly vouch for Wills's credibility. Because there was no error on this basis, defendant cannot establish plain error affecting his substantial rights. *Pipes*, 475 Mich at 279.

With regard to Tiffaney Blossom, Kyles's mother, the prosecutor stated:

> Tiffaney Blossom, she was the one moving that day. And why was she leaving? Because she was tired of all the nonsense. She was done with it, wanted to get away from it. And that's pretty refreshing, I thought. "Yeah, my family's done wrong, they've invited some of these fights and they've accepted responsibility for it." And she—don't you find that credible? Doesn't that make her more credible when she said, "But Henry and that family also causes problems too, and they got at it."

The prosecutor did not improperly vouch for Blossom's credibility. Specifically, the prosecutor did not state or imply that he had some special knowledge that Blossom's testimony was credible. Blossom testified that her family, and defendant's, bore some responsibility for the long-running feud culminating in the instant shooting. The prosecutor argued a reasonable inference that Blossom's testimony to the effect that her family took some responsibility was "refreshing." In other words, not only did the prosecutor not imply that he had special knowledge of Blossom's credibility, but argued from the facts in evidence. Accordingly, the prosecutor's comments regarding Blossom were not in error, and, therefore, defendant cannot establish plain error affecting his substantial rights. *Pipes*, 475 Mich at 279.

With regard to CS, a 10-year-old eyewitness, the prosecutor stated:

> Defense counsel said, "Well, you didn't talk with the police until 11 days later." That's true. So if she really wanted to go after this Defendant, wouldn't she have called the police a little earlier and say, "Hey, I want to get him, I want to get him." Does she really have an axe to grind. She's a ten year old kid. You think she really wants to get caught up in this mess? You think she really has an axe to grind?

The prosecutor did not improperly vouch for CS's credibility. The prosecutor did not imply that he had some special knowledge of her credibility, instead arguing that she should be believed due to the facts in evidence. CS testified that she was 10 years old at the time of the incident and acknowledged that she did not speak with police until 11 days after the shooting. The prosecutor, therefore, argued the reasonable inference that if CS had been willing to lie to punish defendant, she would have gone to the police earlier. Because this comment was not improper, there was no error and, accordingly, defendant cannot establish plain error affecting substantial rights. *Pipes*, 475 Mich at 279.

Defendant also challenges the prosecutor's remarks in closing argument regarding his credibility:

> And the key here is not that the Defendant lied, the key is why do you feel the need to lie? Why did he feel that need to lie? Because he knew he was guilty. That's why he felt—felt the need to lie. And he only changed his statement after

he found out about changes that he didn't know about in the law—not changes in the law, but what he thought the law would protect him.

The prosecutor's characterization of defendant as a liar did not constitute misconduct because the prosecutor permissibly argued that the jury should not believe defendant based on the evidence admitted at trial. *Howard*, 226 Mich App at 548. Defendant admitted that he initially lied to the police when he told them that his friend Marcus fired the gun from defendant's front porch, and he eventually acknowledged that it was he who fired the gun. Defendant also admitted that he lied when he originally told police that Hassel and Wright both had guns and shot at him first. At trial, defendant testified that he shot first once he saw Hassel's hand in a book bag holding the handle of what defendant believed to be a gun. In other words, the prosecutor did not imply that he had some special knowledge that defendant had lied. In fact, he argued from the facts in evidence, and, indeed, defendant's own admissions, that defendant had lied. The fact that defendant lied about the particular facts of the incident at issue allowed the prosecutor to argue the reasonable inference that defendant lied in an attempt to avoid criminal liability. Because this prosecutorial comment was not improper, there was no error and, accordingly, defendant cannot establish plain error affecting substantial rights. *Pipes*, 475 Mich at 279.

Even if the prosecutor's conduct were improper, defendant cannot establish that the allegedly improper comments affected the outcome of the proceedings. *Pipes*, 475 Mich at 279. The jury was instructed in detail that it was its duty alone to find defendant guilty or not guilty of the charged crimes. It was further instructed that it was required to determine whether to believe a witness's testimony in whole or in part. Finally, the jurors were instructed that the prosecutor's statements were not evidence, and to base its verdicts only on the evidence properly introduced at trial. Jurors are presumed to follow their instructions. *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008); see also *Bahoda*, 448 Mich at 281 ("Assuming there was some impropriety in [the prosecutor's closing] . . . argument, the judge's instruction that arguments of attorneys are not evidence dispelled any prejudice.").

Defendant next argues that his convictions were not supported by sufficient evidence. He also argues that the trial court abused its discretion in denying his motion for a new trial on the ground that the jury's verdicts were against the great weight of the evidence. We disagree.

Whether a defendant's conviction was supported by sufficient evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "This Court reviews for an abuse of discretion the trial court's denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001).

When determining whether sufficient evidence supports a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). Circumstantial evidence and reasonable inferences that arise therefrom may be sufficient to prove the elements of an offense. *Harverson*, 291 Mich App 176. When reviewing the sufficiency of evidence, we

will not interfere with the jury's determinations regarding the weight of the evidence or the credibility of witnesses. *Stevens*, 306 Mich App at 628.

A verdict is against the great weight of the evidence only when the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Except in the rare case when directly contradictory testimony is so far impeached that it has no probative value or the testimony is contradicted by indisputable physical facts or physical realities, we must defer to the jury's determination. *Id*. at 643-644; *Musser*, 259 Mich App at 219.

The gravamen of defendant's sufficiency and great-weight arguments on appeal is that the evidence supported that he acted in self-defense; therefore, he was not criminally liable for his actions.

"Once a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010). The Self-Defense Act, MCL 780.971 *et seq*., has codified the circumstances in which a person may use self-defense. MCL 780.972 provides in relevant part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Thus, consistent with the common law, a person who uses excessive force or acts as the initial aggressor cannot be found to have acted in justifiable self-defense. *People v Guajardo*, 300 Mich App 26, 35-36, 43; 832 NW2d 409 (2013).

Viewed in the light most favorable to the prosecution, the evidence was sufficient to support a rational jury finding that defendant did not act in self-defense. Specifically, the evidence supported a jury finding that defendant was the initial aggressor and used excessive force. Several witnesses testified that defendant threatened Hassel and Wright before being threatened himself. More than one witness testified that defendant threatened to kill the victims. Indeed, some witnesses testified that Hassel and Wright did not threaten defendant at all. Those who testified that Wright threatened defendant first (other than defendant himself) agreed that Wright did so from the street, without brandishing a weapon, while defendant stood on his porch. So, defendant's response of firing a gun toward Wright supported a finding of excessive force. Most important to the finding that defendant was the initial aggressor, however, was the nearly unanimous testimony that defendant fired first. Indeed, defendant acknowledged that he did so.

The majority of witnesses testified that Hassel and Wright either did not fire back at all or only did so after retrieving a gun from the U-Haul after defendant opened fire. Many witnesses testified that Hassel and Wright did not approach defendant or step onto his property. Because defendant admitted to firing first, and ample testimony supported that he did so without being threatened with a gun or other deadly force, the evidence was sufficient to support a finding that he was the initial aggressor. To the extent Wright threatened defendant to a weapon-free fight in the street, we again conclude that the evidence was sufficient to support a finding that defendant responded with excessive force by firing a gun at Wright and Hassel. Although some of the conflicting testimony supported defendant's version of events, we will not interfere with the jury's determinations of witness credibility. *Stevens*, 306 Mich App at 628, 630-631. Accordingly, viewed in the light most favorable to the prosecution, sufficient evidence was presented to allow a rational jury to conclude beyond a reasonable doubt that defendant used deadly force when he did not honestly and reasonably believe it to be necessary to prevent the imminent death or great bodily harm of himself or another individual. MCL 780.972(1)(a).

Defendant's convictions were supported by sufficient evidence independent of his claim of self-defense. The elements necessary to prove AWIGBH are: (1) an assault (an attempt or threat to physically hurt another), with (2) the intent to do great bodily harm less than murder. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). The necessary intended level of bodily harm is that of a serious injury of an aggravated nature. *Id*. "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Stevens*, 306 Mich App at 629.

Defendant admitted to firing at least two shots in the direction of Hassel and Wright. Other witnesses testified that defendant fired at least five shots in that direction. Two bullet holes were found in the side of the U-Haul. There was also testimony that defendant threatened to kill Hassel and Wright before firing the shots. Thus, sufficient evidence was presented to allow a rational jury to conclude that defendant attempted and threatened to harm Hassel and Wright, the first necessary element. There was also sufficient evidence to allow a rational jury to conclude that defendant shot at Wright and Hassel with the intent to cause a serious injury of an aggravated nature, i.e., to do great bodily harm less than murder. Specifically, evidence showed defendant used a dangerous weapon, and he threatened to kill both victims. Although defendant testified that he did not intend to harm Hassel or Wright, questions of witness credibility are reserved for the jury. Here, the jury did not believe defendant. *Id*. at 630-631. To the extent defendant argues that his AWIGBH convictions cannot stand because neither Hassel nor Wright suffered physical injury, we agree his argument is without merit. Actual injury is not an element of AWIGBH. *Id*. at 629. Accordingly, defendant's convictions for AWIGBH were supported by sufficient evidence. *Stevens*, 306 Mich App at 628; *Brown*, 267 Mich App at 147.

The elements of felon-in-possession include a conviction of a prior specified felony, the possession of a firearm, and that defendant's right to possess a firearm had not been restored. MCL 750.224f; *People v Perkins*, 473 Mich 626, 629-631; 703 NW2d 448 (2005). At trial, the parties stipulated that defendant had been convicted of a prior specified felony, and defendant admitted to having a prior felony conviction for unarmed robbery. Thus, the evidence was sufficient to allow a rational jury to find the first element proven beyond a reasonable doubt. Defendant admitted to possessing and firing a firearm during the incident at issue. This evidence was sufficient to allow a rational jury to find the second element proven beyond a reasonable

doubt. Defendant does not contend, and the record does not support, that his right to possess a firearm had been restored. Indeed, defendant admitted that he was not allowed to possess a firearm at the time of this incident. So, again, the evidence was sufficient to allow a rational jury to find the third element proven beyond a reasonable doubt. Accordingly, defendant's conviction for felon-in-possession was supported by sufficient evidence.

To be guilty of felony-firearm, MCL 750.227b, "one must *carry* or *possess* the firearm, and must do so *when* committing or attempting to commit a felony." *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000). Defendant admitted to possessing and firing a firearm during the incident at issue, sufficient evidence to allow a rational jury to conclude that defendant carried or possessed a firearm beyond a reasonable doubt. Likewise, defendant admitted to firing the weapon at Hassel and Wright, which formed the basis for his convictions for AWIGBH and felonious assault. Those crimes are felonies. MCL 750.226; MCL 750.84. Thus, sufficient evidence was presented to allow a rational jury to conclude beyond a reasonable doubt that defendant possessed or carried a firearm when committing a felony. *Burgenmeyer*, 461 Mich at 438. Accordingly, defendant's conviction for felony-firearm was supported by sufficient evidence. *Stevens*, 306 Mich App at 628.

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). As discussed with regard to AWIGBH, sufficient evidence was presented to allow a rational jury to conclude that defendant attempted to inflict bodily harm to Hassel and Wright by firing shots in their direction, i.e., committed the subject assaults, satisfying the first element. A firearm, or "gun," constitutes a dangerous weapon under the felonious assault statute. MCL 750.82(1). Accordingly, sufficient evidence was presented to allow a rational jury to conclude that the second element was proven beyond a reasonable doubt. Because there was testimony that defendant fired several shots in the direction of Hassel and Wright and threatened to kill them, we find sufficient evidence was presented to allow a rational jury to infer that defendant acted with the intent to injure, or to place both Hassel and Wright in reasonable apprehension of an immediate battery, satisfying the third element. *Avant*, 235 Mich App at 505. Accordingly, defendant's convictions for felonious assault were supported by sufficient evidence. *Stevens*, 306 Mich App at 628.

The elements of CCW with respect to carrying a weapon in a vehicle are: (1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) the defendant knew or was aware of its presence, and (3) defendant was carrying the weapon. *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999). Witnesses testified that defendant pulled a firearm from his pocket before firing it toward Hassel and Wright. Defendant originally told police that when he left the scene, he took the firearm with him in his grandmother's vehicle and later gave it back to Marcus. At trial, although defendant claimed he left the gun in a freezer in his home, a police officer testified that the freezer was thoroughly searched on the day of the shooting and that no gun was recovered, belying defendant's claim that he did not possess the gun in a vehicle. Moreover, one witness testified that defendant immediately left the scene in a vehicle. This testimony, when viewed in the light most favorable to the prosecution, was sufficient to allow a rational jury to conclude that the necessary elements of CCW in a vehicle were proven beyond a reasonable doubt. *Id*.; *Stevens*, 306 Mich App at 628.

For much the same reasons, the trial court did not abuse its discretion in denying defendant's motion for a new trial on the ground that the jury's verdicts were against the great weight of the evidence. The evidence supporting defendant's convictions and the evidence rebutting his claim of self-defense was almost exclusively based on eyewitness testimony. Defendant introduced conflicting testimony and, to some extent, impeached the credibility of some of the prosecution's witnesses. But this is insufficient to support reversal on the ground that the jury's verdicts were against the great weight of the evidence. *Musser*, 259 Mich App at 218-219. The record does not show that the testimony supporting his convictions was "so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradict indisputable physical facts or defied physical realities[.]" *Id*. Defendant instead argues that because differing accounts of the incident were offered, the jury could not have properly found defendant guilty of the crimes and could not have found that he did not act in self-defense. However, there was testimony sufficient to support the jury's verdicts and, to the extent differing testimony was offered, it was the jury's prerogative to accept or reject any testimony offered at trial. Those determinations will not be disturbed. Thus, the evidence did not preponderate so heavily against the jury's verdicts such that it would be a miscarriage of justice to allow them to stand. *Id*. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new trial on the ground that the jury's verdicts were against the great weight of the evidence. *McCray*, 245 Mich App at 637.

Defendant next argues that his convictions violated the constitutional prohibition against double jeopardy. We disagree.

Defendant did not raise a double jeopardy challenge in the trial court, rendering this argument unpreserved. *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). "We review an unpreserved claim that a defendant's double jeopardy rights have been violated for plain error that affected the defendant's substantial rights . . . ." *Id*.

> The United States and Michigan Constitutions protect a person from being twice placed in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, 15. The prohibition against double jeopardy provides three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. [*People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004)(citations omitted).]

Defendant argues he received multiple punishments for the same offense. The multiple-punishment prong of the Double Jeopardy Clause constrains the judiciary but not the Legislature. *People v Miller*, 498 Mich 13, 17-18; 869 NW2d 204 (2015). Consequently, the issue of multiple punishments for the "same offense" presents a question of legislative intent. *Id*. at 18. When the Legislature does not clearly express its intent in a statute, "courts must then apply the abstract legal elements test" to determine whether the Legislature intended multiple punishments. *Id*. at 19. "This test focuses on the statutory elements of the offense to determine whether the Legislature intended for multiple punishments." *Id*. Under the abstract legal elements test, when each of the offenses for which a defendant is convicted contains an element that the other does not, they are not the "same offense" for purposes of the multiple-punishment prong of the Double Jeopardy Clause. *People v Ream*, 481 Mich 223, 225-226, 242; 750 NW2d 536 (2008).

Thus, "two offenses will only be considered the 'same offense' where it is impossible to commit the greater offense without also committing the lesser offense." *Miller*, 498 Mich at 19.

The statutory language of AWIGBH and felonious assault does not evince a legislative intent with regard to multiple punishments. MCL 750.84; MCL 750.82. Likewise, the statutory language of felon-in-possession, felony-firearm, and CCW does not evince such intent. MCL 750.224f; MCL 750.227b; MCL 750.227. Accordingly, we must consider whether these offenses contain elements that the others do not. *Miller*, 498 Mich at 19.

Defendant's convictions for two counts of both AWIGBH and felonious assault (one count each for Hassel and Wright) did not violate the constitutional prohibition against double jeopardy "because the two crimes have different elements." *People v Strickland*, 293 Mich App 393, 401-402; 810 NW2d 660 (2011), citing *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007) ("Because the crimes have different elements, the defendant may be punished for each."). So, AWIGBH and felonious assault are not the "same offense" for purposes of double jeopardy.

Defendant's convictions of felon-in-possession, felony-firearm, and CCW also did not violate double jeopardy. In *People v Sturgis*, 427 Mich 392, 409-410; 397 NW2d 783 (1986), our Supreme Court held that convictions for both felony-firearm and CCW did not violate double jeopardy, provided that the CCW charge was not the predicate felony for felony-firearm. The predicate felonies for defendant's felony-firearm convictions were AWIGBH and felonious assault, not CCW. Therefore, defendant's convictions for felony-firearm and CCW did not violate double jeopardy. In *People v Dillard*, 246 Mich App 163, 167-168; 631 NW2d 755 (2001), this Court held that convictions for both felony-firearm and felon-in-possession did not violate double jeopardy. Accordingly, defendant's convictions for these two crimes did not violate double jeopardy. And, in *People v Mayfield*, 221 Mich App 656, 661-662; 562 NW2d 272 (1997), this Court held that convictions for both CCW and felon-in-possession did not violate double jeopardy. Accordingly, defendant's convictions for these two crimes did not violate double jeopardy. Thus, defendant's three firearm-related convictions do not violate the constitutional prohibition against double jeopardy.

Because none of defendant's convictions violates double jeopardy, he cannot establish that plain error occurred that affected his substantial rights. *Pipes*, 475 Mich at 279.

Defendant argues in his Standard 4 brief that he is entitled to a new trial because the trial court both failed to conduct jury selection and to administer the proper jury oath. We review these unpreserved claims for plain error affecting substantial rights. See *People v Cain*, 498 Mich 108, 116-117; 869 NW2d 829 (2015). These claims fail because defendant has not furnished this Court with a record sufficient to substantiate his claims of error. See *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Specifically, this Court does not have either the transcript of the jury selection or the oath administration. The trial court register of actions indicates that the jury was selected and sworn on the first day of trial. Defendant has failed to provide evidence that the jury selection and oath administration did not occur; therefore, he has failed to establish that error occurred and is not entitled to relief. *Pipes*, 475 Mich at 279.

Finally, defendant argues that he was deprived of the effective assistance of counsel due to his trial counsel's failure to (1) object to the alleged instances of prosecutorial misconduct, (2)

raise a double jeopardy challenge, (3) object to improper jury selection and the trial court's failure to administer the proper jury oath, and (4) subpoena or otherwise obtain the testimony of six witnesses who purportedly would have testified on defendant's behalf. We disagree.

Because no *Ginther*[1] hearing was held in the trial court, our review is limited to errors apparent on the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

The right to the effective assistance of counsel is guaranteed by the United States and Michigan constitutions. US Const Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039, 80 L Ed 2d 657 (1984); *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *Swain*, 288 Mich App at 643. "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant was not deprived of the effective assistance of counsel by his trial counsel's failure to object to the alleged instances of prosecutorial misconduct. As discussed, the prosecutorial remarks cited by defendant did not constitute misconduct, so any objection by his trial counsel would have been futile. Counsel is not ineffective for failing to make meritless objections. *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004). Further, because any objection by defendant's trial counsel would have been futile, defendant cannot establish a reasonable probability that but for his trial counsel's failure to object, the outcome of the trial would have been different. *Swain*, 288 Mich App at 643. Moreover, the jury was properly instructed that the prosecutor's statements were not evidence, and jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 237. Accordingly, defendant was not deprived of the effective assistance of counsel due to his trial counsel's failure to object to the alleged instances of prosecutorial misconduct.

Neither was defendant deprived of the effective assistance of counsel due to his trial counsel's failure to raise a double jeopardy objection. As discussed, defendant's claims regarding double jeopardy are without merit. So, any objection by defendant's trial counsel on this ground would have been futile, and counsel is not ineffective for failing to raise meritless objections. *Matuszak*, 263 Mich App at 58. Defendant was not deprived of the effective assistance of counsel due to his trial counsel's failure to raise a double jeopardy objection.

With respect to the alleged failure of the trial court to conduct jury selection and to administer the proper jury oath, again, we note that defendant has failed to provide this Court with a factual basis to sustain this argument. Hence, defendant has also failed to satisfy his burden to establish the factual predicate for this claim of ineffective assistance of counsel. See *People v Hoag*, 460 Mich 1, 6, 594 NW2d 57 (1999). Because defendant has failed to provide

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

factual support for his claims that the trial court failed to conduct jury selection and administer the proper jury oath, he cannot establish that his trial counsel's failures to object to those two alleged errors fell below objective standards of reasonableness. *Id*. at 8-9; *Swain*, 288 Mich App at 643. Moreover, because defendant cannot establish that his trial counsel failed to raise meritorious objections, he cannot establish a reasonable probability that but for his trial counsel's failure to object on these grounds, the outcome of the trial would have been different. Accordingly, defendant was not deprived of the effective assistance of counsel due to his trial counsel's failure to object to the jury selection and administration of the jury oath.

Defendant was not deprived of the effective assistance of counsel due to his trial counsel's failure to subpoena or otherwise obtain the testimony of six witnesses who purportedly would have testified on defendant's behalf. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Defendant has not overcome this presumption. *Id*. It is possible that defendant's trial counsel interviewed these witnesses and elected not to present their testimony because it was cumulative, untrustworthy, or, in counsel's judgment, otherwise unbeneficial to defendant's case. Moreover, the record contains no factual basis to support that these witnesses would have testified as defendant claims. Defendant has not provided, either below or on appeal, affidavits or other evidence to suggest how these witnesses would have testified. Thus, defendant has failed to establish the factual predicate for this claim of ineffective assistance of counsel. *Hoag*, 460 Mich at 6. Because defendant has provided no evidence to support how these witnesses would have testified, he cannot establish that his trial counsel's failure to present their testimony fell below objective standards of reasonableness; nor can he establish a reasonable probability that, but for his trial counsel's failure to present their testimony, the outcome of the trial would have been different. *Id*. at 8-9; *Swain*, 288 Mich App at 643. Accordingly, defendant's claim of effective assistance of counsel due to his trial counsel's failure to present the testimony of these six witnesses, fails.[2]

Just before oral argument, this Court granted defendant's motion, *in propria persona*, to raise additional issues on appeal. *People v Griffin*, unpublished order of the Court of Appeals, entered July 27, 2016 (Docket No. 325275). Defendant argues that the trial court violated his Sixth Amendment right to a jury trial by engaging in judicial fact-finding to score certain sentencing guidelines offense variables (OVs) in calculating his mandatory minimum sentence. See *People v Lockridge*, 498 Mich 358, 364-365, 399; 870 NW2d 502 (2015) (interpreting and applying the rule of *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), to Michigan's sentencing guidelines). The *Lockridge* Court held that "the Sixth

---

[2] In his Standard 4 brief, defendant appears to suggest that his trial counsel was ineffective for failing to argue that defendant could not be convicted of AWIGBH because Hassel and Wright were not physically injured. As discussed already, this argument is without merit because actual injury is not an element of AWIGBH. *Stevens*, 306 Mich App at 629. Thus, any argument by counsel to that effect would have been meritless, and counsel is not ineffective for failing to make meritless arguments. *Matuszak*, 263 Mich App at 58.

Amendment does not permit judicial fact-finding to score OVs to increase the floor of the sentencing guidelines range," *id*. at 388-389, and that the constitutional flaw of Michigan's sentencing guidelines permitting judicial fact-finding to calculate a mandatory minimum sentence range should be cured by rendering the guidelines advisory only, *id*. at 365, 399.

We review defendant's constitutional challenge de novo. *Lockridge*, 498 Mich at 373. Because defendant did not preserve this issue by raising it in the trial court, our review is limited to plain error affecting defendant's substantial rights. *Id*. at 392, citing *Carines*, 460 Mich at 763-764. The plain error rule requires showing that (1) error occurred, (2) the error was plain, clear or obvious, and (3) the plain error affected the outcome of the proceedings. *Pipes*, 475 Mich at 279. "[E]ven if a defendant satisfies those three requirements, an appellate court must exercise its discretion . . . . . Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *Lockridge*, 498 Mich at 393. A *Lockridge* plain error requires showing that (1) a defendant's guidelines minimum sentence range is actually constrained by a Sixth Amendment violation and (2) that the defendant is not sentenced to an upward departure. *Id*. at 395. An unconstitutional constraint occurs "[w]hen a defendant's sentence is calculated using a guidelines minimum sentence range in which OVs have been scored on the basis of facts not admitted by the defendant or found beyond a reasonable doubt by the jury[.]" *Id*. at 391-392. Consequently, a threshold showing of plain error that may require resentencing requires a defendant to demonstrate that the defendant's "OV level was calculated using facts beyond those found by the jury or admitted by the defendant and that a corresponding reduction in the defendant's OV score to account for the error would change the applicable guidelines minimum sentence range." *Id*. at 399.

In this case, defendant argues that his guidelines minimum sentence ranges were actually constrained by a Sixth Amendment violation when the trial court engaged in judicial fact-finding to score OV 1 at 25 points, MCL 777.31(1)(a) (a firearm discharged at or toward a human being); scoring OV 2 at 5 points, MCL 777.32(1)(d) (the offender possessed or used a pistol, rifle, shotgun or knife); scoring OV 3 at 10 points, MCL 777.33(1)(d) (bodily injury requiring medical treatment occurred to a victim); and by scoring OV 9 at 10 points, MCL 777.39(1)(c) (2 to 9 victims were placed in danger of physical injury or death). Defendant reasons that the facts required for these OV scores were not necessarily found by the jury when it convicted him of two counts of AWIGBH. See *Stevens*, 306 Mich App at 628-629 (observing that while using a dangerous weapon and injury are not elements of AWIGBH, they are evidence of intent). Although defendant is correct concerning the elements of AWIGBH, impermissible judicial fact-finding was not necessary to score the questioned OVs. The scoring of OV 2 and OV 9 were supported by defendant's convictions of two counts of felonious assault, two counts of felony firearm, and CCW, that were charged on the basis that defendant used, possessed, and carried a pistol. Thus, the scores of OV 2 and OV 9 were supported by facts found by the jury. *Lockridge*, 498 Mich at 391-392, 399.

With respect OV 1, defendant admitted during his testimony at trial that he fired a pistol at or toward the two victims. And, with respect to OV 3, defendant also testified at trial that his sister was shot during the incident and transported to the hospital. Defendant further testified that he went to the hospital to see his sister and was concerned whether she would live. That

-13-

defendant's sister suffered a bodily injury (gunshot wound) requiring medical treatment as a result of this incident is a fair inference from defendant's admissions.[3]

This Court recently addressed of the meaning of "admitted by the defendant" for the purpose of scoring offense variables in *People v Garnes*, ___ Mich App ___; ___ NW2d ___ (Docket No. 324035, July 19, 2016). The *Garnes* Court held "that 'admitted by the defendant' under *Lockridge* means *formally* admitted by the defendant *to the court*, in a plea or in testimony or by stipulation or by some similar or analogous route." *Id.*, slip op at 3 (emphasis in original). Defendant's testimony under oath at his own trial satisfies this formal admission criterion. As such, defendant's Sixth Amendment rights were not violated. Defendant has not established plain error occurred because his "OV level was calculated using facts . . . found by the jury or admitted by the defendant . . . ." *Lockridge*, 498 Mich at 399.

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher

---

[3] The trial court ruled at defendant's sentencing hearing that although defendant's sister was not an intended "victim," the 10 point score for OV 3 was proper under the reasoning of *People v Laidler*, 491 Mich 339, 341, 350; 817 NW2d 517 (2012), which held that a coperpetrator killed during the course of the charged defendant's criminal actions is a "victim" for purposes of OV 3. No appeal of this legal ruling has been taken.