PEOPLE v MUSSER

Docket No. 239922. Submitted October 7, 2003, at Grand Rapids. Decided October 28, 2003, at 9:00 A.M. Leave to appeal sought.

Joseph A. Musser was convicted by a jury in Kalamazoo Circuit Court, William G. Schma, J., of first-degree home invasion, MCL 750.110a, and fourth-degree criminal sexual conduct (CSC), MCL 750.520e, after he entered the home of the complainant and effectuated sexual contact with her. The defendant appealed, arguing that his convictions were against the great weight of the evidence, that he was denied his right to due process because of prearrest delay, that he was denied the effective assistance of counsel, and that he had not committed an assault for purposes of satisfying MCL 750.110a.

The Court of Appeals *held*:

1. The defendant's convictions are supported by the complainant's testimony and are not against the great weight of the evidence. Although the complainant's credibility was challenged by the defense, it cannot be said that her testimony was deprived of all probative value or that the jury could not have believed it, or that the testimony contradicted indisputable physical facts or defied physical realities.

2. The defendant failed to show that his right to due process was violated as a result of the thirteen-month delay between the date of the offense and his arrest because he failed to show that he was actually and substantially prejudiced by the delay. Although the defendant points to the fact that one of his defense witnesses was exposed to intense cross-examination regarding his memory of the events, the record discloses that this witness did not waver from his testimony in support of the defendant. Furthermore, the defendant was not denied the effective assistance of counsel when counsel failed to move to dismiss the charges because of the delay since it is not apparent that a motion to dismiss would have been successful where there is no indication that the defendant was prejudiced by the delay.

3. The defendant's commission of fourth-degree CSC constituted an "assault" for purposes of the first-degree home invasion statute, MCL 750.110a(2), which requires that a defendant enter a dwelling

with the "intent to commit a felony, larceny, or assault in the dwelling . . . ." Contrary to the defendant's argument, it cannot be concluded that the Legislature intended to limit the meaning of "assault" in the statute to conduct proscribed only by the general assault statutes. This conclusion is consistent with prior case law defining the term "assault," and with case law concluding that CSC crimes are actually specialized or aggravated forms of assault.

Affirmed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Heather S. Bergmann*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Rubina S. Mustafa*) for the defendant.

Before: GRIFFIN, P.J., and NEFF and MURRAY, JJ.

PER CURIAM. Defendant Joseph A. Musser appeals as of right his jury trial convictions of first-degree home invasion, MCL 750.110a, and fourth-degree criminal sexual conduct (CSC), MCL 750.520e. Defendant was sentenced to 4½ to 20 years' imprisonment for the home invasion conviction, and sixteen to twenty-four months' imprisonment for the CSC conviction. We affirm.

### I. FACTUAL BACKGROUND

The complainant testified that she was sleeping on the couch in her living room around 8:00 P.M., when she was awakened by defendant standing over her and grabbing her. As defendant grabbed the complainant, he said, "Baby, you know I've been wanting you." The complainant told defendant to stop and to get out, but defendant continued to grab her breasts and tried to slip his hand up her nightgown. Defendant

was on top of the complainant, and continued to move his hands from the complainant's breasts to her vaginal area. Because of the complainant's struggling, defendant was unable to touch her vagina. Defendant rubbed his unexposed, erect penis over the complainant's clothes toward her leg and vaginal area. According to the complainant, the incident lasted approximately twenty to twenty-five minutes.

Defendant fled when the complainant's mother-in-law arrived in a car outside the complainant's house. The mother-in-law saw a man run out of the house and ride away on a bicycle, but she could not identify him. The complainant also saw defendant ride away on a bicycle. The mother-in-law testified that the complainant was hyperventilating, crying, and unable to speak. The responding police officer also testified that it looked like the complainant had been crying. As defendant fled, the complainant called Tonya Musser, defendant's wife and the complainant's friend, to tell her what happened.

Defendant's friend, Jim Verity, testified that he and defendant rode bicycles to the complainant's house, and that the complainant motioned for defendant to come into the house. Verity rode away to inspect a construction job that he previously worked on, and later rejoined defendant as defendant was leaving the complainant's house. Verity denied seeing the mother-in-law or her car.

Tonya Musser testified that she had a financial dispute with the complainant regarding a pager that she purchased from the complainant. Musser believed that the complainant was drunk and had "passed out" earlier in the afternoon after arguing with her. Musser told defendant about the dispute and the complain-

ant's condition, and defendant said he would go and talk to the complainant about the money. Although Musser denied that the complainant called her after the incident, she later testified that she called the complainant and talked with the mother-in-law and the complainant around 9:00 P.M., and that the complainant "sounded fine." Musser stated that the conversation was about the money, and not about defendant's alleged actions.

Defendant testified that he went to the complainant's house to discuss the pager dispute with the complainant. Defendant believed the complainant might have been drunk because "every time [he] saw her she was drunk." According to defendant, the complainant motioned defendant into her house. Defendant testified that he threatened to file a "small claims" lawsuit over the dispute, and left after less than five minutes. Defendant saw the mother-in-law arrive as he was leaving. Defendant denied touching the complainant.

## II. GREAT WEIGHT OF THE EVIDENCE

Defendant first argues that his convictions are not supported by the great weight of the evidence. Defendant failed to preserve this issue by not raising it in a motion for a new trial. *People v Winters*, 225 Mich App 718, 729; 571 NW2d 764 (1997). Therefore, review of this issue is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict

that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). "[U]nless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *Id.* at 645-646 (citation omitted).

We find that defendant's convictions are supported by the complainant's testimony. Defendant contends that the complainant's testimony contradicted indisputable physical facts at trial. However, defendant's arguments do not relate to *indisputable physical facts*, but rather to inconsistencies between the testimony of different witnesses and the evidence presented. Although the complainant's credibility was challenged by the defense, we cannot say that the complainant's testimony was deprived of all probative value or that the jury could not have believed it, or that the testimony contradicted indisputable physical facts or defied physical realities. *Lemmon, supra.* Accordingly, defendant failed to demonstrate a plain error affecting his substantial rights. *Carines, supra.*

III. PREARREST DELAY

Defendant next argues that he was denied his right to due process because there was a thirteen-month delay between the date of the offense and the date of his arrest. Defendant did not preserve this issue by

not raising it below; therefore, we review this issue for plain error. *Carines, supra.*

In order to demonstrate a violation of the right to due process on the basis of preindictment or pre-arrest delay, a defendant must show actual and substantial prejudice to his right to a fair trial. *People v Adams*, 232 Mich App 128, 133-134, 139; 591 NW2d 44 (1998). A general claim that the memories of witnesses have suffered is insufficient to demonstrate prejudice. *People v Crear*, 242 Mich App 158, 166; 618 NW2d 91 (2000).

We find no plain error affecting defendant's substantial rights because defendant did not demonstrate prejudice resulting from the delay. Although defendant argues that defense witness Verity was exposed to intense cross-examination regarding his memory of the events, the record discloses that Verity did not waver from his testimony in support of defendant. In fact, Verity insisted that he recalled the date in question because "this is the only day that we had drove over by [the complainant's] house on bikes." Accordingly, defendant has failed to demonstrate that he was prejudiced by any delay, and has therefore failed to demonstrate a plain error affecting his substantial rights.

Defendant also argues that he was denied the effective assistance of trial counsel when counsel failed to move to dismiss the charges on the basis of the delay. Defendant failed to preserve this issue for review because he failed to make a testimonial record in the trial court pursuant to a motion for a new trial or a

*Ginther*[1] hearing. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000).

To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that there is a reasonable probability that, but for the deficiency, the fact-finder would not have convicted the defendant. *People v Pickens*, 446 Mich 298, 312; 521 NW2d 797 (1994). See also *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Limiting our review to the existing record, it is not apparent that a motion to dismiss would have been successful because there is no indication that defendant was prejudiced by the delay. *Snider, supra*; *Adams, supra*. Therefore, defendant has failed to establish that trial counsel was ineffective.

### IV. HOME INVASION CONVICTION

Finally, defendant argues that his conviction of first-degree home invasion should be reversed because the offense must be based on an intent to commit, or the actual commission of, a "felony, larceny, or assault," pursuant to MCL 750.110a(2). Specifically, defendant contends that he did not commit one of the enumerated offenses under the home invasion statute because fourth-degree CSC is only a misdemeanor, and does not constitute an "assault" within the meaning of the statute. Because the jury was not instructed on the elements of CSC offenses aside from the fourth-degree CSC offense, a misdemeanor,[2] the precise issue before this Court is

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[2] MCL 750.520e.

whether fourth-degree CSC constitutes an "assault" for purposes of the first-degree home invasion statute. We find that it does.

This issue involves a question of statutory interpretation, which this Court reviews de novo. *People v Phillips*, 469 Mich 390, 394; 666 NW2d 657 (2003). The primary goal of statutory construction is to ascertain and give effect to the intent of the Legislature. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001). We must first examine the language of the statute itself. *Phillips, supra* at 395. "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and the statute is enforced as written." *Id.*

The first-degree home invasion statute, MCL 750.110a(2), provides:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
> (b) Another person is lawfully present in the dwelling.

As indicated by defendant, the statute does not define the term "assault." Contrary to defendant's argument, however, we are unable to conclude that the Legislature's placement of the word "assault" in the home invasion statute contemplated conduct pro-

scribed only by the "general assault" statutes. Indeed, the home invasion statute makes no mention of the "general assault" statutes, and does not direct one to refer to the "general assault" statutes. Instead, the home invasion statute unambiguously proscribes the entry of a dwelling with the intent to commit certain conduct, and the commission of the conduct therein, including an "assault." The statute, therefore, proscribes a person from entering a dwelling with the intent to commit an "assault."

Although the term "assault" is not defined within the statute, our Supreme Court has previously defined this term. In *People v Reeves*, 458 Mich 236, 239; 580 NW2d 433 (1998), the Supreme Court explained that while the penalty and constituent elements of aggravated assaults are codified, "the *definition* of assault is left to the common law." (Emphasis added.) As further stated by the *Reeves* Court, Michigan has defined the term "assault" as " 'either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.' " *Id.* at 240 (citation omitted).

Furthermore, this Court has recognized that CSC crimes are actually a specialized or aggravated form of assault. In *People v Corbiere*, 220 Mich App 260, 264; 559 NW2d 666 (1996), recognizing that criminal sexual conduct and assault statutes were enacted to protect distinct legislative interests, this Court indicated that " '[t]he Legislature has gone to great lengths to carve out sexual *assaults* from other types of assaults.' " (Citation omitted; emphasis changed.) The Court continued:

> "Society views *sexual assaults* as particularly heinous and the Legislature has determined punishments for the

various types of criminal sexual conduct. There is a specific '*assault*' crime associated with criminal sexual conduct . . . ." [*Id.* at 264-265 (citation omitted; emphasis added).]

Thus, the fact that the penalty and constituent elements of CSC crimes are codified in a different section than the "general assault" crimes does not mean that CSC crimes do not constitute a specific type of assault. Accordingly, we hold that fourth-degree CSC constitutes an assault for the purposes of the home invasion statute, and therefore defendant's conviction for home invasion must be affirmed.

Affirmed.