# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

COREY KENT HORN,

Defendant-Appellant.

UNPUBLISHED
March 17, 2015

No. 318972
Wayne Circuit Court
LC No. 12-009793-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

COREY KENT HORN,

Defendant-Appellant.

No. 318975
Wayne Circuit Court
LC No. 13-001862-FC

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM.

In Docket No. 318972, defendant appeals by right his jury trial convictions of kidnapping, MCL 750.349(1)(c), two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(c) (sexual penetration occurring during any other felony), and armed robbery, MCL 750.529. Defendant was sentenced to 17 to 50 years' imprisonment for each of his convictions. In Docket No. 318975, defendant appeals by right his jury trial convictions of kidnapping, MCL 750.349(1)(c), and two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(c) (sexual penetration occurring during any other felony). Defendant was

-1-

sentenced 25 to 50 years' imprisonment for each of his convictions.[1] We affirm in both docket numbers.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The two cases arise from defendant's sexual assaults of LK (Docket No. 318972) and ES (Docket No. 318975).

## A. DOCKET NO 318972

On September 7, 2012, LK went for a walk in the afternoon. LK was walking from her home near Nine Mile and Van Dyke to a car dealership in the area of Eight Mile and Van Dyke. As LK was walking, she and defendant passed each other on the street. Defendant asked LK if she was "looking for a boy or girl." LK understood that "boy" referred to heroin and "girl" referred to cocaine. LK turned around and told defendant that she did not use heroin or cocaine, but that she did smoke marijuana. LK then told defendant that if he knew where LK and defendant could obtain marijuana, LK and defendant could smoke a "blunt" together.

At that time, defendant began walking with LK. As LK and defendant walked, they started a friendly conversation and defendant told LK that his name was Howard. Defendant gave his phone number to LK and she programmed his phone number into her cell phone so that she could purchase marijuana from defendant in the future. During the conversation, LK told defendant that she was not a prostitute. As LK and defendant walked, they stopped at a gas station to purchase an orange soda and cigarillos, so that LK could roll marijuana in the cigarillos to smoke.

Defendant and LK then walked to an abandoned house in the area of Seven Mile and Van Dyke. LK walked into the house and into the bedroom. Defendant went into another room in the house, emerged with a gun in his hand, and told LK to give him her money. LK gave defendant the money she had in her jeans, which LK estimated to be $11. Defendant then told LK to get undressed and to "take her pants down." LK complied; defendant then ordered LK to perform oral sex on him. LK got on her knees and defendant put his penis in her mouth. After a while, defendant took his penis out of LK's mouth and told her to get on the bed, and to bend over. Defendant penetrated LK's vagina with his penis. At some point, defendant removed his penis, and LK got off the bed and pulled up her pants. Defendant then asked LK, "Where's the money?" LK stated that she did not have any more money. LK then began searching through her purse to find more money. Seeing her bottle of mace, LK grabbed the bottle and sprayed defendant in the face until he ran from the house.

LK's medical examination revealed no injuries. Defendant's DNA was not found in LK's mouth, underwear, or vagina. A forensic expert testified that it is possible for a person to be penetrated in the vagina and not find a donor's DNA on a vaginal swab, particularly when

---

[1] On April 16, 2014, this Court entered an order consolidating defendant's appeals. *People v Horn*, unpublished order of the Court of Appeals, entered April 16, 2014 (Docket Nos. 318972 and 318975).

ejaculation does not occur. Even when ejaculation does occur, it is possible that a donor's DNA will not be found on a vaginal swab.

The prosecution read into evidence defendant's testimony from his previous trial.[2] Defendant denied raping LK and testified instead that he had paid LK for sex. Defendant further testified that LK told him that it would cost $80 dollars for oral and vaginal sex, that he paid her $40 dollars and told her he would give her the rest later, and that he gave her his cell phone number.

## B.  DOCKET NO. 318975

In the afternoon on August 27, 2012, ES rode her bike to several restaurants in the area of Seven Mile and Van Dyke to pick up job applications. When ES came to the intersection of Van Dyke and Emery, she got off of her bike, and stood "there for a minute, waiting" to cross the road. She heard footsteps and was grabbed from behind by defendant. Defendant "pushed" a gun into ES's ribcage. Defendant told ES, "If you scream, I'll knock you out for the next guy."

Defendant then "dragged" and "pulled" ES to an abandoned house. ES tried to resist, but she could not get away from defendant. Defendant dragged ES to the front door of the house and pulled her up the steps. Defendant grabbed ES by her arms and waist, and took her up to the second story of the house. Defendant pushed ES into a room, pointed a black gun at her head, and said, "Take your [expletive] clothes off." ES reached into her pocket and grabbed her cell phone to call 911. Defendant slapped ES's cell phone out of her hand and repeated his demand that ES take off her clothes. ES complied.

After ES was undressed, defendant indicated with his gun for ES to go into the bathroom. ES walked into the bathroom and defendant told her to stop. Defendant attempted to insert his penis into ES's mouth, but ES kept her mouth closed. Defendant then forced his penis into ES's anus and vagina. ES was unsure whether defendant ejaculated. After defendant removed his penis from her vagina, he told ES to get dressed and to leave within 40 seconds. Defendant then grabbed ES's cell phone and left the house. ES put on her clothes, went downstairs, walked outside, and started to walk back home.

As ES was walking, a neighbor[3] asked ES whether she was okay. ES told the neighbor that she had "just got raped." The neighbor accompanied ES to ES's house to make sure that she made it home safely. Once ES was in her house, she called her ex-boyfriend, Carter[4], and told him what had happened.

---

[2] Defendant was previously tried for the same offenses against both victims and testified on his own behalf. The prior trial resulted in a mistrial.

[3] The neighbor's name is not mentioned in the transcripts.

[4] Carter is only identified in the transcripts as "Carter," with no mention of any other first or last name.

A medical examination revealed a tear within ES's labial opening. A forensic biologist testified that DNA found on a vaginal swab taken from ES matched that of defendant.

The prosecution again read into evidence defendant's testimony from his previous trial. Defendant denied raping ES. Defendant testified that he had paid ES for sex and that ES had inquired about purchasing heroin. Defendant denied having a gun, forcing ES into the abandoned house, or forcing ES to have sex.

Defendant was arrested in possession of a gun. The jury convicted defendant as described above. This appeal followed. On appeal, defendant asserts that the verdicts in both cases were against the great weight of the evidence.

## II.  STANDARD OF REVIEW

With respect to a case tried before a jury, an objection going to the weight of the evidence is preserved by a motion before the trial court for a directed verdict or new trial. *People v Cameron*, 291 Mich App 599, 618; 806 NW2d 371 (2011); *People v Abraham*, 256 Mich App 265, 269; 662 NW2d 836 (2003). Defendant failed to preserve this issue. Therefore, review of the issue is limited to plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003), citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

In order for a defendant to establish plain error, the defendant must show that (1) an error must have occurred, (2) the error was plain, clear or obvious, and (3) the plain error affected the defendant's substantial rights. *Carines*, 460 Mich at 763. The third requirement requires a showing of prejudice. *Id*. To show prejudice, the error must have affected the outcome of the lower court proceedings. *Id*.

## III.  GREAT WEIGHT OF THE EVIDENCE

A new trial may be granted on some or all of the issues in a trial if the verdict is against the great weight of the evidence. *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998). When reviewing a claim that a verdict is against the great weight of the evidence, this Court must review the entire body of proofs. *People v Lemmon*, 456 Mich 625, 638-639; 576 NW2d 129 (1998). The test is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *Gadomski*, 232 Mich App at 28. Conflicting testimony and credibility issues are an insufficient ground for granting a new trial absent exceptional circumstances. *Lemmon*, 456 Mich 625 at 642. Exceptional circumstances include where the testimony contradicts indisputable physical facts or laws, the testimony is patently incredible or defies physical realities, the testimony is material and is so inherently implausible that it could not be believed by a reasonable juror, or the testimony has been seriously impeached such that it was deprived of all probative value and the case is marked by uncertainties and discrepancies. *Id*. at 642-644, 647.

DOCKET NO. 318972

Defendant argues in Docket No. 318972 that LK's testimony is "bizarre and incredible" and also argues that the lack of DNA evidence supports his contention that his conviction was against the great weight of the evidence. We disagree.

-4-

LK testified that while she was upstairs in the abandoned house, defendant entered her room with a gun in his hand, told LK to give him any money she had, took the money that she then surrendered to him, directed LK to get undressed and to "take her pants down," and forced oral and vaginal sex upon her. The jury could reasonably find that defendant restrained LK, robbed her at gunpoint, and committed criminal sexual conduct. The only specific testimony of LK that defendant identifies as supposedly "bizarre and incredible" is her testimony that she told defendant "out of the blue" that she was not a prostitute, whereas defendant testified that she told him that she was a prostitute. Defendant further appears to imply that LK's marijuana use, which was presented to the jury, rendered her testimony patently incredible. Finally, defendant appears to imply that LK's testimony that she was only intimate with one man is inconsistent with DNA testing results, which revealed two donors other than LK and defendant. However, conflicting testimony and credibility issues are insufficient grounds for granting a new trial absent exceptional circumstances. *Lemmon*, 456 Mich 625 at 642. No such exceptional circumstances exist in this case. Further, none of the alleged inconsistencies relate to proof of the crimes for which defendant was convicted. Therefore, the evidence does not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow it to stand. *Gadomski*, 232 Mich App at 28. There was no plain error requiring reversal.

## DOCKET NO. 318975

Defendant argues in Docket No. 318975 that ES's testimony contains "many inconsistencies" that "strain credulity." Defendant points to the fact that ES initially admitted to using heroin but later denied heroin use at trial, that she testified on previous occasions to having told her neighbor she "had an accident" rather than was raped, and that she had described defendant to police on the day of the incident as "friendly" but later testified that he had threatened her. Defendant also makes reference to ES's testimony that she had memory problems and could not remember specifically what time the incident occurred. Finally, defendant refers to the fact that ES did not identify defendant from a photographic lineup.

Although inconsistent in some respects, ES's testimony was not so seriously impeached as to deprive her testimony of all probative value. ES's memory issues and inconsistency in testimony were presented to the jury. ES made an in-court identification of defendant as the man who had raped her. The jury was presented with the fact that ES had identified another man in an earlier photographic lineup, and defendant does not allege that the in-court identification lacked an independent basis for admission. See *People v Gray*, 457 Mich 107, 115; 577 NW2d 92 (1998). Again, conflicting testimony and credibility issues are insufficient grounds for granting a new trial absent exceptional circumstances. *Lemmon*, 456 Mich 625 at 642. Because exceptional circumstances do not exist in this case, the evidence does not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow it to stand. *Gadomski*, 232 Mich App at 28. There again was no plain error requiring reversal.

Affirmed in both docket numbers.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell