*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

HOMER THOMAS LANGRILL,

      Defendant-Appellant.

UNPUBLISHED
November 21, 2019

No. 342344
Oakland Circuit Court
LC No. 2017-262974-FH

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of two counts of uttering and publishing, MCL 750.249. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to two to 20 years' imprisonment for each count of uttering and publishing. We affirm defendant's convictions and sentences, but remand to the trial court to correct the judgment of sentence to reflect 92 days of jail credit.

## I. FACTUAL BACKGROUND

This case arises from an alleged scheme in which defendant provided his landlord, Jaypiakah Raisoni, with checks or "drafts" as payment for his lease.[1] Raisoni rented his home in Rochester Hills, Michigan, to defendant on December 15, 2015. Defendant rented the property partially as a home and partially as a corporation on behalf of the company First Fidelity Trust & Bancorp. Defendant was required to pay a security deposit of $8,550 and a cleaning fee of $1,500. On December 15, 2015, defendant presented to Raisoni a draft for $8,550 and a draft for $1,500 as payment for the security deposit and the cleaning fee. Defendant explained to Raisoni that the drafts could be cashed at his bank. Defendant also informed Juanita Mallmann, the real estate broker, that the drafts were "as good as a check."

---

[1] The documents that defendant gave Raisoni as payment were referred to throughout the trial as both "checks" and "drafts." We refer to the documents as drafts herein.

The security deposit and cleaning fee drafts were issued by First Fidelity Trust & Bancorp. On the bottom of the drafts in small print, it states: "ATTENTION: This instrument is a COLLECTION ITEM and must be submitted w/ full banking instructions[.]" It also states: "Directly to FIRST FIDELITY TRUST & BANCORP Documentary Credit 848 N. Rainbow Blvd, Las Vegas, Nevada, 89107."

Raisoni attempted cash the drafts at Citizens Bank, but the bank refused to cash the drafts, finding that they were not legitimate. Defendant then instructed Raisoni to mail the drafts to the address provided on the drafts, and the money would be deposited in Raisoni's bank account. Raisoni mailed the drafts to the address, but the drafts were returned two weeks later. Defendant told Raisoni that he would personally deposit the money into Raisoni's bank account, but Raisoni never received the money owed to him.

Detective Shawn Pace investigated the address associated with First Fidelity Trust & Bancorp and concluded that it was not a valid financial institution. The address was actually a mailing service that forwarded mail sent to that address to defendant at his home in Troy, Michigan. Moreover, the phone number for First Fidelity Trust & Bancorp connected to a third-party phone service. Nobody at the phone service was familiar with First Fidelity Trust & Bancorp. The trial court found defendant guilty of two counts of uttering and publishing. This appeal followed.

## II. GREAT WEIGHT OF THE EVIDENCE

First, defendant argues that the verdict was against the great weight of the evidence. We disagree.

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018), quoting *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). "Generally, a verdict may only be vacated when the verdict is not reasonably supported by the evidence, but rather it is more likely attributable to factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations." *People v Solloway*, 316 Mich App 174, 183; 891 NW2d 255 (2016) (citation and quotation marks omitted).

MCL 750.249 describes uttering and publishing as: "(1) A person who utters and publishes as true a false, forged, altered, or counterfeit record, instrument, or other writing listed in section [MCL 750.248] knowing it to be false, altered, forged, or counterfeit with intent to injure or defraud is guilty of a felony[.]" Therefore, the elements of uttering and publishing are "(1) knowledge on the part of the accused that the instrument was false; (2) an intent to defraud; and (3) presentation of the forged instrument for payment. To utter and publish a forged instrument is to declare or assert, directly or indirectly, by words or actions, that an instrument is good." *People v Johnson-El*, 299 Mich App 648, 652; 831 NW2d 478 (2013) (citation and quotation marks omitted).

Defendant argues that Detective Pace never investigated whether First Fidelity Trust & Bancorp existed; rather, Detective Pace investigated other companies with "First Fidelity" in its

name. Therefore, according to defendant, there is no way of knowing if the drafts were fraudulent. However, defendant misrepresents Detective Pace's testimony. Detective Pace, the trial court, and the prosecutor frequently referred to First Fidelity Trust & Bancorp by different names. Specifically, "First Fidelity," First Fidelity Incorporated," and "First Fidelity Corporation" were used interchangeably when referencing First Fidelity Trust & Bancorp. However, when viewed in context, it is clear that all parties were referring to the investigation pertaining to First Fidelity Trust & Bancorp. Moreover, the drafts, which were admitted into evidence, prominently display the name First Fidelity Trust & Bancorp. Thus, defendant has failed to establish that "the evidence preponderated heavily against the trial court's verdict." *Solloway*, 316 Mich App at 183 (alteration, citation, and quotation marks omitted).

Defendant also argues that it was against the great weight of the evidence for the trial court to find that the drafts were fraudulent, and therefore he was guilty of uttering and publishing, where the trial court also found that Citizens Bank erred in not presenting the drafts for collection in accordance with the instructions listed on the instruments themselves. However, this argument is also without merit.

During trial, the trial court commented that Citizens Bank should have submitted the drafts to First Fidelity Trust & Bancorp for collection in accordance with the instructions on the instruments. However, this statement was made prior to Detective Pace testifying that First Fidelity Trust & Bancorp was not a legitimate financial institution. Following closing arguments, the trial court reiterated that Citizens Bank erred in failing to submit the drafts to collections for payment, but the trial court explained that the bank's error did not preclude it from finding defendant guilty. The trial court stated:

> The case rests on the fact of what [Detective Pace] did. The detective checked out First Fidelity. It doesn't exist. These are false, fraudulent, fake, whatever else you can call 'em.
>
> The bank screwed up. The bank should have presented [the drafts] for payment, but that's not what the statute requires. The statute requires that a person who . . . utters and publishes as true a false, forged, altered, or counterfeit record, instrument or other writing listed in section [MCL 750.248] knowing it to be false, altered, forged, or counterfeit with intent to injure or defraud is guilty of a felony.
>
> That's exactly what [defendant] did here. . . .

We find no error in the trial court's conclusion.

The evidence presented at trial established that defendant presented to drafts to Raisoni: one for $8,550, and one for $1,500. Defendant told Raisoni that the drafts could be cashed at Raisoni's bank, and further represented to Mallmann that the drafts were "as good as a check." However, when Raisoni presented the drafts to Citizens Bank, Citizens Bank refused to cash them, believing the drafts to be illegitimate. When Raisoni attempted to send the drafts to First Fidelity Trust & Bancorp for collection at the instruction of defendant, the drafts were returned. Upon investigation by Detective Pace, it was uncovered that all mail sent to the address used by

First Fidelity Trust & Bancorp was actually forwarded to defendant's address in Troy, Michigan. Detective Pace also learned that First Fidelity Trust & Bancorp is not a legitimate financial institution.

The foregoing evidence does not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Defendant clearly intended false drafts to be used as payment, and issued them knowing they were false. From these facts, a reasonable trier of fact could conclude defendant intended to defraud Raisoni. Thus, we conclude that defendant has failed to show that his uttering and publishing convictions are against the great weight of the evidence.

## III. SUFFICIENCY OF THE EVIDENCE

Second, defendant argues that the prosecution presented insufficient evidence for the trial court to find defendant guilty of two counts of uttering and publishing. We disagree.

> This Court reviews a challenge to the sufficiency of the evidence de novo. The evidence is viewed in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt. Evidence is sufficient if, when viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Direct and circumstantial evidence, including reasonable inferences arising from the use of circumstantial evidence, may provide sufficient proof to meet the elements of a crime. [*People v Bailey*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 342175); slip op at 2 (citations and quotation marks omitted).]

As noted, the elements of uttering and publishing are "(1) knowledge on the part of the accused that the instrument was false; (2) an intent to defraud; and (3) presentation of the forged instrument for payment." *People v Johnson-El*, 299 Mich App 648, 652; 831 NW2d 478 (2013). Again, the prosecution presented evidence at trial that defendant presented two drafts to Raisoni for payment of a security deposit and a cleaning fee associated with the rental of a residential property, and advised that they were "as good as a check." The drafts were issued by Fidelity Trust & Bancorp, which Detective Pace investigated and determined to be an illegitimate financial institution. The mailing address used by Fidelity Trust & Bancorp actually forwarded all mail to defendant's address in Troy, Michigan, and the phone number used by Fidelity Trust & Bancorp was linked to a third-party telephone service that was not familiar with Fidelity Trust & Bancorp. Indeed, when Raisoni presented the drafts to Citizens Bank for payment, Citizens Bank concluded they were illegitimate. Raisoni attempted to mail the drafts to Fidelity Trust & Bancorp for payment, but the drafts were returned. These facts lead to a reasonable inference that the drafts were a false instrument, and at the time defendant presented the drafts to Raisoni as a form of payment, defendant knew the instruments were false, and intended to defraud Raisoni. The evidence supports the trial court's determination that the prosecution presented sufficient evidence that defendant committed the crime of uttering and publishing.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Third, defendant argues that defense counsel was ineffective for failing to cross-examine or impeach Detective Pace regarding his investigation of First Fidelity Trust & Bancorp. We disagree.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Solloway*, 316 Mich App at 187. "Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Id*. at 188. However, because defendant failed to preserve his claim[2], our review is limited to mistakes apparent on the record. *Id*.

"[E]stablishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), citing *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Randolph*, 502 Mich at 9 (citation, quotation marks and footnote omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation and quotation marks omitted). Moreover, "[a] defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *People v Rosa*, 322 Mich App 726, 741; 913 NW2d 392 (2018).

As this Court has previously noted, "[d]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Muhammad*, 326 Mich App 40, 66; 931 NW2d 20 (2018) (quotation marks omitted) (alteration in original). Defense counsel's decisions regarding the scope of cross-examination are afforded the same deference. *Id.*

As discussed above, defendant mischaracterizes Detective Pace's trial testimony. Although Detective Pace refers to First Fidelity Trust & Bancorp by other names, it is clear when reviewing his testimony as a whole that he was investigating the financial institution named on the drafts. Thus, trial counsel's decision not to cross-examine Detective Pace on that point is presumed to be trial strategy, and we decline to substitute our judgment for counsel's.

---

[2] Although defendant did file a motion to remand with this Court, it was denied. *People v Langrill*, unpublished order of the Court of Appeals, entered January 23, 2019 (Docket No. 342344). Defendant's second motion to remand was also denied. *People v Langrill*, unpublished order of the Court of Appeals, entered November 12, 2019 (Docket No. 342344).

Moreover, defendant fails to establish that if trial counsel had cross-examined Detective Pace on that point, the outcome of the trial could have been different. Accordingly, we conclude defendant's claim of ineffective assistance of counsel is without merit.

## V. JAIL CREDIT

Finally, defendant argues that he is entitled to 92 days of jail credit for time served between the date of the bench trial, October 24, 2017, and the date of sentencing, January 24, 2018. We agree.

"Whether a defendant is entitled to credit for time served in jail before sentencing is a question of law that we review de novo." *People v Armisted*, 295 Mich App 32, 49; 811 NW2d 47 (2011).

Defendant argues that he should be awarded jail credit for the time served pursuant to MCL 769.11b, which provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

The trial court found defendant guilty on October 24, 2017, and ordered that he be taken into custody. Defendant's bond was revoked on the same day. The presentence investigation report (PSIR) indicates that defendant's bond was revoked from October 24, 2017 through December 12, 2017. Defendant's initial sentencing hearing was scheduled for December 13, 2017, but it was adjourned until January 24, 2018. There is no indication in the record that defendant was released from jail between October 24, 2017, and January 24, 2018. More than 72 days elapsed between these two dates. Therefore, the trial court erred in only awarding defendant 72 days of jail credit, and a remand is necessary for the trial court to amend the judgment of sentence.

We affirm defendant's convictions and sentences, but remand to the trial court to correct the judgment of sentence to reflect 92 days of jail credit. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark T. Boonstra
/s/ Anica Letica

-6-