*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
August 20, 2020

v

PAUL EDWARD LOJEWSKI,

      Defendant-Appellant.

No. 347111
Monroe Circuit Court
LC No. 18-244593-FH

Before: GLEICHER, P.J., and STEPHENS and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of accosting, enticing, or soliciting a child for immoral purposes, MCL 750.145a, and two counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e (multiple variables). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 58 to 180 months' imprisonment for accosting, enticing, or soliciting a child for immoral purposes and to 46 to 180 months' imprisonment for each count of CSC-IV. We affirm.

## I. BACKGROUND

In 2014, JC and defendant met through JC's brother, AC. By 2016, JC and defendant often spent time together alone. On November 14, 2016, JC and defendant went fishing at Dog Lady Island located in Monroe, Michigan. On their way to Dog Lady Island, defendant put his hand on JC's left thigh near his knee. JC felt uncomfortable, but did not say anything and moved his leg away from defendant's hand. When JC arrived home later that night, he informed his mother that defendant touched him and asked his mother if he should "be worrying about it" or if it was just a "friendly gesture." His mother told JC that she did not think defendant was "that type of person."

The next day, November 15, 2016, defendant asked JC to go fishing with a group of friends. JC said yes because he wanted to know if the incident that occurred the day before was merely a fluke. While the group was fishing, defendant asked JC to go to defendant's apartment to get something to drink with defendant. Defendant did not ask anyone else in the group to go with him. JC initially said no, but defendant became upset and JC agreed to go. While they were driving, defendant ran his right hand up JC's inner thigh and grabbed JC's penis over JC's red

-1-

shorts. JC surreptitiously took two photographs of defendant's hand on his penis with his cell phone while pretending to play a game. When they arrived at defendant's apartment, JC and defendant entered defendant's apartment and JC sat down on defendant's La-Z-Boy chair. Defendant sat on the arm of the chair, put his arm around JC, and started to move his hand toward JC's penis. JC stood up to get away from defendant and defendant went to the bathroom. When defendant walked back into the living room from the bathroom, defendant "came up from behind" JC and grabbed JC's penis. JC ran out of the apartment, got into the backseat of defendant's car, and asked defendant to take him home. Despite the fact that JC showed his mother the cell phone photos, his mother did not report the incident to law enforcement. Instead, law enforcement learned of the photos from defendant's landlord who said she saw the photos on the social media platform Facebook. Law enforcement interviewed JC who confirmed that he was the boy in the photos and that the hand belonged to defendant. Defendant was subsequently charged with accosting, enticing, or soliciting a child for immoral purposes, MCL 750.145a, and two counts of CSC-IV, MCL 750.520e .

At trial, the testimony regarding the assault came principally from JC and his mother, who disagreed on several details. For example, despite testimony from his mother that JC sent the photographs to a family friend before sending them to her, JC also testified that he sent the cellular photos only to his mother. JC's mother also testified that she had not gone to law enforcement with the photos because she thought she had handled the issue by confronting defendant and warning him to never be around JC again. However, JC testified that he and his mother did not contact law enforcement because defendant's family sent him and his mother threatening text messages.

On October 24, 2018, defendant was found guilty by a jury of all counts. On December 5, 2018, defendant unsuccessfully filed a motion for a directed verdict or new trial. On December 20, 2018, defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 58 to 180 months' imprisonment for accosting, enticing, or soliciting a child for immoral purposes and to 46 to 180 months' imprisonment for each count of CSC-IV. This appeal ensued.

## II. GREAT WEIGHT OF THE EVIDENCE

Defendant first argues that he is entitled to a new trial because the jury's verdict was against the great weight of the evidence. We disagree.

"In contrast to a challenge to the sufficiency of the evidence, a motion for a new trial based on a belief that the verdict was against the great weight of the evidence does not implicate issues of constitutional magnitude and, for that reason, the decision to grant a new trial is committed to the discretion of the trial court." *People v Roper*, 286 Mich App 77, 83-84; 777 NW2d 483 (2009). "Accordingly, this Court reviews a trial court's decision on a motion regarding the great weight of the evidence for an abuse of discretion." *Id*. at 84. "A trial court abuses its discretion when it selects an outcome that is not within the range of reasonable and principled outcomes." *Id*.

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). A verdict is against the great weight of the evidence "when the evidence does not

reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Conflicting testimony alone will not typically warrant a new trial. *Musser*, 259 Mich App at 219. " '[U]nless it can be said that directly contradictory testimony was so far impeached that it "was deprived of all probative value or that the jury could not believe it," or contradicted indisputable physical facts or defied physical realties, the trial court must defer to the jury's determination.' " *Id.*, quoting *People v Lemmon*, 456 Mich 625, 645-646; 576 NW2d 129 (1998) (citation omitted). Moreover, this Court may not substitute its view of the credibility of witnesses for that of the jury. *Lemmon*, 456 Mich at 642.

A defendant is guilty of accosting a child for immoral purposes if he " '(1) accosted, enticed, or solicited (2) a child (or an individual whom he believed was a child) (3) with the intent to induce or force that child to commit (4) a proscribed act.' " *People v Gaines*, 306 Mich App 289, 311; 856 NW2d 222 (2014), quoting *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011); MCL 750.145a. Alternatively, a defendant may also be guilty of accosting a child for immoral purposes if he " '(1) encouraged (2) a child (or an individual whom he believed was a child) (3) to commit (4) a proscribed act.' " *Gaines*, 306 Mich App at 312, quoting *Kowalski*, 489 Mich at 499; MCL 750.145a. A proscribed act includes an act of sexual intercourse, an act of gross indecency, or any other act of depravity or delinquency. MCL 750.145a.

A defendant is guilty of CSC-IV, as relevant herein, as follows:

(1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if any of the following circumstances exist:

(a) That other person is at least 13 years of age but less than 16 years of age, and the actor is 5 or more years older than that other person.

(b) Force or coercion is used to accomplish the sexual contact. . . . [MCL 750.520e(1)(a) and (b); *People v Lockett*, 295 Mich App 165, 179 n 2; 814 NW2d 295 (2012).]

For purposes of CSC-IV, "sexual contact" is defined as follows:

the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:

(*i*) Revenge.

(*ii*) To inflict humiliation.

(*iii*) Out of anger. [MCL 750.520a(q).]

Defendant argues that the jury's verdict was against the great weight of the evidence because JC and his mother were not credible witnesses. He argues that JC's mother inaccurately identified defendant's hand in the photographs and that JC and his mother testified inconsistently with regard to the dates and locations of the incidents and the reason that law enforcement was not contacted by JC's mother. Conflicting testimony is an insufficient ground for granting a new trial. *Musser*, 259 Mich App at 219. Moreover, "the weight and credibility of evidence, and the inferences to be drawn from the evidence, are matters for the jury to resolve," not the court. *People v Anderson*, 322 Mich App 622, 633; 912 NW2d 607 (2018).

The defendant failed to establish that JC's and his mother's contradictory testimony was so far impeached that it was deprived of all probative value or contradicted physical facts or defied physical realties. *Musser*, 259 Mich App at 219. The only physical fact that was impeached was the testimony from JC's mother that she identified the hand in the cellular pictures as belonging to the defendant because of a scar on his right hand when it was in fact on his left hand. Defense counsel effectively cross examined both JC and his mother about the inconsistencies between them and argued those to the jury. The inconsistencies from JC were about dates and places and not about the nature of the assault. JC's mother testified that the defendant, once confronted with her accusation, apologized. Additionally, Monroe Police Detective Renae Peterson testified that JC disclosed to her that defendant sexually assaulted him and showed her one of the photographs that he took of the incident that was saved on his cell phone. The court instructed the jury on witness credibility and this jury resolved credibility in favor of the prosecution. That is not error.

## III. HABITUAL OFFENDER ENHANCEMENT

Defendant argues that he is entitled to be resentenced as a nonhabitual offender because the prosecution failed to serve a notice of its intent to seek a fourth-offense habitual offender enhancement within 21 days after filing the information and failed to timely file a proof of service with the clerk of the court. Defendant also argues that the harmless error standard should not apply to the prosecution's requirement to timely file and serve a habitual offender notice because it would render the 21-day notice requirement null. We disagree.

The question of whether the habitual offender notice requirements were met "is reviewed de novo as a question of law because it involves the interpretation and application of statutory provisions and court rules." *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018).

MCL 769.13 governs the process by which the prosecution may seek to enhance a defendant's sentence and provides, in relevant part:

(1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes

-4-

of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

The purpose of MCL 769.13 is to ensure that a defendant receives notice that he could be sentenced as a habitual offender at an early stage in the proceedings. *Head*, 323 Mich App at 543. "The failure to file a proof of service of the notice of intent to enhance the defendant's sentence may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual-offender notification." *Id.* at 544-545, citing *People v Walker*, 234 Mich App 299, 314-315; 593 NW2d 673 (1999) (holding that the prosecution's failure to file a proof of service of the intent to seek an enhanced habitual-offender sentence with the clerk of the court was harmless and did not require resentencing because defendant had received actual notice of the enhancement). To determine whether the defendant received notice of the prosecution's intent to seek an enhanced sentence, this Court may consider whether the defendant received actual notice of the enhancement at the preliminary examination, arraignment, or sentencing, and whether he had access to the charging documents throughout the proceeding. *Head*, 323 Mich App at 544-545.

A review of the record reveals that the prosecution filed the supplemental information on July 19, 2018, with the clerk of the court. The supplemental information included a fourth-offense habitual offender notice and apprised defendant of his forth-offense habitual offender status. At the arraignment on July 20, 2018, the prosecution served defendant's trial counsel with a notice of its intent to seek an enhanced sentence, as permitted by MCL 769.13(2). At the arraignment, defendant's trial counsel waived a formal reading of the information, as permitted by MCR 6.113(B), and confirmed that he and defendant received a copy of the supplemental information. On July 24, 2019, the prosecution filed a proof of service with the clerk of the court.

The prosecution's failure to timely file notice or proof of service was harmless error where the defendant had actual notice and was not prejudiced in his ability to respond to the habitual offender notification. *Head*, 323 Mich App at 544. A fourth-offense habitual offender notice was included on the supplemental information and on the amended supplemental information which was filed on October 24, 2018. The presentence investigation report additionally indicated that defendant was to be sentenced as a fourth-offense habitual offender, and at sentencing, defendant did not object to being sentenced as a fourth-offense habitual offender. Defendant does not argue that he was without access to the court file that contained the habitual offender notice, failed to dispute the trial court's references to the enhancement, and did not express surprise during sentencing. Therefore, defendant is not entitled to resentencing on this ground.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens
/s/ Thomas C. Cameron