*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY JOHN OTTO,

        Defendant-Appellant.

FOR PUBLICATION
September 14, 2023

No. 362161
Macomb Circuit Court
LC No. 2021-000966-FC

Before: GLEICHER, C.J., and JANSEN and HOOD, JJ.

JANSEN, J. (*dissenting*)

For the reasons that follow, I respectfully dissent. I would affirm defendant's conviction of reckless driving causing death, MCL 257.626(4), because defendant failed to establish that he was provided ineffective assistance of counsel for trial counsel's failure to move to dismiss this charge on the basis that the cause of the accident that killed the victim arose from the lack of maintenance of the vehicle.

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). The trial court's findings of fact are reviewed for clear error and legal questions are reviewed de novo. *Id*. Clear error occurs when the reviewing court is left with a definite and firm conviction that a mistake was made. *Id*. A criminal defendant's right to a fair trial is protected by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 17. This includes the right to effective assistance of counsel; trial counsel is presumed to be effective, and defendant has the burden to prove otherwise. *Isrow*, 339 Mich App at 531. "To establish ineffective assistance of counsel, a defendant must show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *Id*. at 531-532 (quotation marks and citation omitted). "Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel." *Id*. at 532. Issues of statutory interpretation are reviewed de novo. *People v Peltola*, 489 Mich 174, 178; 803 NW2d 140 (2011).

Defendant argues that trial counsel provided ineffective assistance by failing to move to dismiss the reckless-driving-causing-death charge against defendant on the basis that the charge's element of "operation" of the vehicle can only be proven when the accident is caused by the driver's manner of operating the vehicle and not when the accident is caused by the driver's failure to adequately maintain the vehicle. The prosecution acknowledged in the trial court and on appeal that its charging defendant with reckless driving causing death on the basis of a failure to properly maintain the vehicle defendant was driving during the accident was a novel legal theory. In my opinion, the language of the statute does not exclude such a reading, the majority reading of the statute is too narrow, and the prosecution did not, as stated by the majority opinion, usurp the duty of the Legislature to define crimes by "riffing on equivocal language."

The reckless-driving statute, MCL 257.626, provides in pertinent part:

> (1) A person who violates this section is guilty of reckless driving punishable as provided in this section.

> (2) Except as otherwise provided in this section, a person who operates a vehicle upon a highway or a frozen public lake, stream, or pond or other place open to the general public, including, but not limited to, an area designated for the parking of motor vehicles, in willful or wanton disregard for the safety of persons or property is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

> * * *

> (4) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both. . . .

The Michigan Vehicle Code defines the "operation" of a vehicle as "[b]eing in actual physical control of a vehicle." MCL 257.35a(1)(a). Violations of equipment and maintenance standards are civil infractions that are enforced by police officers who may issue citations and order a driver to have the defects repaired immediately. MCL 257.715(1). MCL 257.683 provides, in pertinent part:

> (1) A person shall not drive or move or the owner shall not cause or knowingly permit to be driven or moved on a highway a vehicle or combination of vehicles that is in such an unsafe condition as to endanger a person, or that does not contain those parts or is not at all times equipped with lamps and other equipment in proper condition and adjustment as required in sections 683 to 711, or that is equipped in a manner in violation of sections 683 to 711. A person shall not do an act forbidden or fail to perform an act required under sections 683 to 711.

> * * *

-2-

(6) Except as otherwise provided in section 698 or 707d, a person who violates a provision of sections 683 to 711 with respect to equipment on vehicles is responsible for a civil infraction.

All vehicles operated on highways must be equipped with various safety-related components, which must meet certain specifications and minimum standards. See MCL 257.683 to MCL 257.711. All vehicles must be maintained according to these provisions. MCL 257.715(1). MCL 257.705(1)(a) requires that any motor vehicle operating on a highway "shall be equipped with brakes adequate to control the movement of and to stop and hold the vehicle . . . ." Any trailer being pulled upon a highway that weighs more than 15,001 pounds, including the trailer in this case, must have operating brakes on all wheels. MCL 257.705(1)(c).

Considering the merits of the issue whether the prosecution must prove it was a defendant's manner of driving the vehicle that caused the death, it is clear from the context of the Michigan Vehicle Code that a failure to maintain a vehicle can sustain a reckless-driving-causing-death conviction.

> Our overriding goal for interpreting a statute is to determine and give effect to the Legislature's intent. The most reliable indicator of the Legislature's intent is the words in the statute. We interpret those words in light of their ordinary meaning and their context within the statute and read them harmoniously to give effect to the statute as a whole. Moreover, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. If the statutory language is unambiguous, no further judicial construction is required or permitted because we presume the Legislature intended the meaning that it plainly expressed. [*Peltola*, 489 Mich at 181 (quotation marks and citations omitted).]

Incorporating the Michigan Vehicle Code's definition of "operating" into the text of the reckless-driving statute, one is guilty of reckless driving causing death when the person is in actual physical control of a vehicle, in willful or wanton disregard for the safety of persons or property, and causes a death. MCL 257.35a(1)(a); MCL 257.626(2) and (4). On the statute's face, there is no specification that the death must have been caused by the manner in which a defendant drove as opposed to the more basic fact that the defendant was operating the vehicle. The majority notes several times that the prosecution's theory is "plausibly" supported by the text, but chooses defendant's theory instead. I would conclude that the plain language of the statute is not exclusive to how an operator drives. Thus, trial counsel was not deficient for failing to move to dismiss the charge where defendant's actions of failing to maintain the vehicle and trailer fall under the statute.

Moreover, defendant was not prejudiced because there was sufficient evidence to convict him of the crime. The elements of reckless driving causing death are that defendant (1) operated a vehicle on a highway, (2) operated the vehicle with willful or wanton disregard for the safety of others, and (3) caused the death of a person. *People v Jones*, 497 Mich 155, 166-167; 860 NW2d 112 (2014). There is no dispute that defendant operated a vehicle on a highway and that a death occurred that would not have if defendant was not driving the dump truck and pulling the trailer the morning of the accident. The question is whether defendant possessed a mental state of willfully or wantonly disregarding the safety of others when he operated the dump truck that

morning.[1] The statute does not suggest that one cannot possess willful and wanton disregard for safety by operating a vehicle that is unfit to be on the road. Further, defendant offers no support for the proposition that a driver is absolved of a moving violation when the moving violation is caused by the failure of equipment the driver is required to maintain. When a vehicle is equipped with a component that violates the safety provisions of the Michigan Vehicle Code, it is considered "out of service" and is prohibited from operating upon a highway. MCL 257.36b. Components on defendant's dump truck and trailer that rendered the vehicle out of service were the cause of the accident.

There was sufficient evidence presented that the condition of the brakes on defendant's dump truck and trailer was the cause of the accident. As an operator of a commercial vehicle, defendant was required to have the dump truck inspected for safety annually and to personally inspect the dump truck before each time defendant drove it. MCL 257.715. One of the dump truck's brake rotors was covered in grease, and another rotor was detached and it appeared that the brake had not been functioning for some time. Several brakes on the trailer were rusty and missing portions of their brake pads. According to Officer Derek Stansbury, the prosecution's expert witness, at least half of the brakes on the dump truck and trailer were visibly defective. Defendant could not legally operate the dump truck and trailer upon a highway with the brakes in that condition. MCL 257.705(2). Although defendant had been driving the dump truck for an hour before the accident, the accident happened when defendant approached the first red light he encountered after more than doubling the vehicle's weight by attaching the trailer and backhoe. The parties stipulated at trial that the dump truck and trailer with attached backhoe was weighed by police, and that the dump truck weighed 17,820 pounds, and the trailer and backhoe combined weighed 26,440 pounds, for a total weight of 43,920 pounds.[2]

Further, other defects on the dump truck and trailer were sufficient to prove that defendant's state of mind regarding the safety of his vehicle rose to the level of a willful and wanton disregard for the safety of others. Defendant's dump truck and trailer had multiple out-of-service violations, and the dump truck and trailer could not be legally operated upon a highway until those conditions were fixed. MCL 257.36b; MCL 257.683(1). According to Officer Stansbury's expert testimony, an out-of-service violation is considered an imminent safety hazard. The trailer was missing a battery for its emergency brake system, which engages when the trailer

---

[1] In response to defendant's motion in limine, the trial court ruled before trial that evidence that defendant took Vicodin the morning of the accident could only be used by the prosecution to show defendant's state of mind regarding compliance with safety regulations and to show that defendant made inconsistent statements regarding whether he had taken Vicodin at the accident scene and during his custodial interrogation. His drug screen showed that defendant did not have enough hydrocodone, the active ingredient in Vicodin, in his system to be legally intoxicated. Regardless, his ingestion of this drug would tend to show that he willfully or wantonly disregarded the safety of others while operating the vehicle under any impairment, however slight.

[2] The parties also stipulated that this total weight was not over the legal limit for weight restrictions on the roadways involved. However, this combined weight demonstrates the added risk defendant undertook in operating such heavy-duty commercial equipment.

separates from the truck. There was oil leaking from the dump truck's axels onto the tires. The dump truck's headlights were not to specification and both the headlights and brake lights did not work. The dump truck had not undergone a required annual inspection since 2015.[3] Also, defendant had affixed to the dump truck and trailer license plates that were assigned to other vehicles, suggesting an attempt to avoid detection of his failure to have the dump truck and trailer inspected. Each of these violations rendered the dump truck and trailer too dangerous to be driven on a public road, rendering any accident caused by a failure to maintain foreseeable to defendant. The fact that defendant drove the dump truck with so many safety violations supports the finding that defendant drove the dump truck with willful and wanton disregard for the safety of others. The facts and circumstances of this case go well beyond the "commonplace conduct" compared in the majority, such as driving on old tires or running out of gas. Here, as a result of defendant's egregious conduct, a child died. Accordingly, there was sufficient evidence for the jury to convict defendant of reckless driving causing death.

Jurors are called to use their "common sense and everyday experience" to reach a verdict. *People v Simon*, 189 Mich App 565, 567; 473 NW2d 785 (1991). A reviewing court must uphold a jury's verdict unless the evidence so clearly preponderates against the defendant's guilt that it would be a miscarriage of justice to allow the verdict to stand. *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003). The majority relies on the defense witness, James Idema, who testified that there was a sudden brake failure caused by a ruptured brake line, which would not have been foreseeable to defendant. Idema is a certified commercial vehicle mechanic, and was qualified by the trial court to provide expert testimony on heavy-duty brakes, heavy-duty steering, and heavy-duty suspension. Officer Stansbury, however, concluded that the accident was caused by the condition of defendant's brakes, although he could not identify any particular defect that was the direct cause as that was outside the realm of his expertise. Officer Stansbury has been a police officer since 2007, and is a motor carrier officer, meaning, he has federal Commercial Vehicle Safety Alliance certification from the U.S. Department of Transportation to conduct commercial motor vehicle inspections after completing the required training program in 2009. He is required to complete 32 level-one inspections each year to keep his certification, which was current up to trial in 2022. He attends yearly trainings in truck enforcement and was trained in accident reconstruction for heavy vehicles. Officer Stansbury was qualified by the trial court as an expert in commercial motor vehicle inspection, requirements for operation of a commercial vehicle, and accident reconstruction. Thus, although Officer Stansbury could not offer an opinion as to why the dump truck brake hit the floor because he is not a mechanic, he did testify that he did not observe any rupture of the brake line, which he did look for in his inspection, and he inspected the totality of the brake line.

"An appellate court must remember that the jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact[.]" *People v Hardiman*, 466 Mich 417, 431; 646 NW2d 158 (2002) (quotation marks, citation, and brackets omitted). It was up to the jury to decide which expert to believe, and in this case, decided in favor with the prosecution. This was reasonable in light of Officer Stansbury's

---

[3] Officer Stansbury first testified that the last inspection in the federal database was from 2018, but upon refreshing his memory, he testified that it was actually 2015.

experience and qualifications, and within the discretion of the jury.  In my view, the analysis of the majority adopting the conclusion of the defense expert as a finding of fact is improper.  On the basis of these facts, defendant has not shown that it would be a miscarriage of justice to uphold the jury's verdict.

In sum, the performance of defendant's trial counsel did not fall below an objective standard of reasonableness because moving to dismiss the reckless-driving-causing-death charge would have been unsuccessful.  Defendant was not prejudiced because there was sufficient evidence to convict defendant of reckless driving causing death on the basis of defendant's failure to maintain the dump truck and trailer's brakes in a condition that the dump truck and trailer could stop safely under ordinary traffic conditions.  Accordingly, I would affirm defendant's conviction and sentence.


/s/ Kathleen Jansen